## M'WHORTER et al v. M'GEHEE.

1. In an action against a sheriff and his securities, his claiming and exercising the office, and their having executed an office bond containing an admission of the fact, estops them from denying that he is sheriff.
2. In renewing the bond of a sheriff under the act of 1822, the bond is good, though taken by the Judge at chambers, and not in open Court. And the Judge at chambers may prescribe the amount of the penalty.
3. The delivery of a bond need not be by express words; acts necessarily implying a delivery, are sufficient.
4. A previous default by which the sheriff and former securities might have been made liable for the same debt, is no defence to after securities
5. Statutes concerning sheriffs' bonds construed.

WILLIAM M'GEHEE issued a notice, directed to John M'Whorter, late sheriff of Jefferson county, and nine

other persons as his securities in office, to notify them that he would move the Circuit Court of said county at the September term, 1825, for judgement against them, under the statute, for moneys collected by M'Whorter on an execution in favor of the appellee against one Tarrant. The notice was executed on M'Whorter, and on Brooks, Hicks, Earle, Brittain, R. Lacy and E Lacy; no return was made as to Goyne, but he appeared; Roy and Hutchinson, the two other securities, were returned not found, and did not appear, and were not considered by the Court as defendants. The sheriff made no defence; but the six securities who were notified, and Goyne, who appeared, pleaded sixteen pleas, embracing every kind of defence which the proof could apply to The second plea avers, "that when the plaintiff's judgement was rendered, M' Whorter was not the sheriff of said county, duly elected qualified and commissioned according to law, nor has he since been." The fifth plea alleges, that the bond on which the securities are charged, "was not taken by the Judge of the County Court in open Court, nor at any term of the Court." The sixth plea averred, "that the bond was taken for an excessive amount, unauthorized by law." The ninth, was a plea of *non est factum*. The twelfth plea was pleaded by Brittain and Goyne separately, who therein alleged, "that the bond was by them executed and delivered to the Judge of the County Court, as an *escrow*, to be valid on condition that M'Whorter should farm out the office to Goyne and one Penland, and give them the exclusive control of it, which he failed to do" Evidence was introduced on both sides, and the parties consented that the Court should decide the cause on a statement of facts agreed.

The facts recited in the case agreed and which were deemed material to the decision in the appellate court, are thus stated in the opinion delivered by this Court:

"A *fieri facias* for $109 98, in favor of M'Gehee, against T. Tarrant, came to the hands of M'Whorter the sheriff, for collection, in April, 1823, which he returned in September following, endorsed "not satisfied." In October, 1823, he received a *ca. sa.*, issued on the same judgement, which was returned endorsed, "property levied but not sold for want of bidders." An alias *ca. sa.* was issued and received in March, 1824, by *Ayres*, successor in office to said M'Whorter, which he returned, endorsed

"debt and interest paid formerly to John M'Whorter, as by reference to his receipt, and other evidence will more fully appear." After which, in November, 1824, an alias *fi. fa.* issued, and was received by said sheriff Ayres, and was by him transferred to *Murray*, his successor in office, who made a return of satisfaction having been received by said M'Whorter, the former sheriff, in substance as last mentioned, and that the defendant had no property within the county, whereof the money or any part thereof could be made. The fact was admitted, that M'Whorter and his deputy had, in October, 1823, and before that time, received and receipted for $91, in part satisfaction of said execution; and that in December following, he receipted the defendant in execution for $20, as a further payment on said execution. It was also proved by Covington, a witness, that he having written authority from M'Gehee, to receive the money from the sheriff, in April or May, 1823, applied to said M'Whorter for it, who admitted that he had collected the money, and would pay him the same in a few days, but that he failed to do so. Covington did not produce the order authorizing him to receive the money, as evidence in Court, or account for its absence.

It was further admitted, that from November, 1822, to March 1824, M'Whorter acted in the character of sheriff of Jefferson county. John Brown, Esq. also proved, that M'Whorter was elected sheriff in August, 1822, and shortly afterwards had what purported to be a regular commission, as sheriff of said county. And that he as Judge of the County Court, administered to said M'Whorter, the legal oaths of office. &c. It was also admitted, that M'Whorter, with securities, in November of the same year, entered into a first office bond; that on application of said securities to Judge Brown, he, by notice, required said sheriff to give other securities, which in July, 1823, was done. And that said M'Whorter having been again required as before, to give new securities, by the securities in the last mentioned bond, on the 7th of October, 1823, appeared before the Judge of the County Court and entered into bond, in the sum of ten thousand dollars, conditioned, &c. The penalty of this and the two preceeding bonds was the same sum. The latter is the bond on which these proceedings were had.

It was also shewn by the testimony of Judge Brown, that M'Whorter and five of the securities named in the bond, on the said 7th day of October, signed the same, but that he, not being satisfied with the sufficiency of the same, required additional names, and that he at the request of those who had signed, kept the bond open until the next day, the 8th, for further securities; on which said last mentioned day, all the other securities signed, but in the absence of and without the knowledge of some of those who signed on the seventh, for aught he knew; that those who signed on the seventh, had their names inserted on that day, and on the eighth, the other names were inserted in the body of the bond. All were fully apprized that they were going securities for the sheriff, and all said bonds, after they were taken, were deposited in the clerk's office of the County Court, as they were respectively taken. We omit stating the facts respecting the expectation or efforts of Penland or Brooks, to obtain the management and controul of the office in consideration of their influence in procuring securities, as it does not appear, if that were material, that any one signed on that condition, or requested to have their names withdrawn before the bond was completed, by reason of any disappointment therein. Any thing that may have been said by Penland on the eighth, respecting the failure of the bond, is considered immaterial, as he was not a party to it; besides Judge Brown flatly contradicts Penland's statement on this point; and as he had an equal opportunity of knowing, his testimony must at least neutralize the other, as far as the Court can determine the fact.*

* Penland, a witness, swore that before taking the last mentioned bond, he had contractᵉd with M'Whorter for the office; that it was agreed that he Penland, and Goyne, were to have the·control of the office, and Penland was to procure sufficient security; that he did procure said Brittain, Roy, Hicks, Goyne and Hutchinson, to enter into said bond as securities; that the Judge rot being satisfied, he requested him to give him until the next day to get further security; that on the next day, he, Penland, having failed in procuring sufficient securities, went to the Judge and informed him that he could not procure sufficient security to satisfy him, and told him to let the bond go, that he would have nothing more to do with it; that Goyne was present, but said nothing; that the Judge had been informed that Penland was to have the management of the office, and was to provide sufficient security.

Brown, the Judge, swore that Penland never told him to let the bond go, and told him nothing about it.

JULY 1828.

M'Whorter et al
v.
M'Gehee.

At the foot of each of the respective bonds, are certificates as follows: To the first, "taken and acknowledged before me, this 18th day of November, 1822," signed "John Brown, J. C. C." To the second, "taken and acknowledged before me, —— day of July, 1823," and not signed. To the third, "signed and acknowledged before me, this 7th October, 1823," signed "John Brown, Judge of the County Court, in and for the county aforesaid." It is also shewn that all the bonds were taken by Brown, as Judge of the County Court, *at chambers, and not in open Court.* Nor was any order ever made, fixing the amount for the bond, or any order on the subject by the *County Court.*

These are all the facts stated, deemed material. On these the Judge of the Circuit Court, at October term, 1826, decided that the securities in the last bond, with the exception of Hutchinson and Roy, who were not served with notice, were liable for the defaults of the sheriff, subsequent to the date of their bond, and that $20 having been collected by the sheriff after that date, and not paid over, it was ordered that judgement should be entered for that amount, with interest and costs. The clerk thereupon entered up judgement "against the defendants" generally, for that amount.

The appellants in this Court assigned for error, that the facts agreed did not warrant the judgement rendered against them; also, that the judgement was general against all the defendants.

BARTON and BUGBEE, for the plaintiffs in error, argued on the following points:

1st. That the facts agreed do not establish the fact that M'Whorter was sheriff, at the time the instrument purporting to be the third bond was executed. [a] The plea puts in issue the fact of his being sheriff, and the plaintiff was bound to produce legal proof that he was sheriff. The proof offered was insufficient. There was no sufficient proof that he was elected, commissioned, or that he took the oaths of office. Again, the office was vacated. [b] The sheriff is bound to give additional security on the day when cited to do so; if he fails, the office, by law, is vacated. It was the duty of the Judge to declare it so. It is not the declaration of the Judge that vacates the office: he only publishes the fact, the law made it vacant: else the Judge could keep him in at discretion. The se-

*z* Laws Ala. 667, 675. § 1. 677. § 10

*b* Laws Ala. 685, § 1, 2, 3.

curities to the second bond on the seventh, were discharged by law.

2nd. That the third bond was not a good statutory bond. The statutes were not pursued. [a] It was not taken by the County Court, as prescribed by the act, but by the Judge at chambers. There is no order of Court fixing the amount of the penalty, nor approving or receiving it, nor any order of the Court on the subject. The act of a Court can be shewn only by its record; it cannot be proved by parol; a Judge cannot be permitted to do an act which the record does not shew. Such a bond, if not taken in pursuance of the statute. is void. [b] Nor was this a good common law bond. There must be a delivery and an acceptance to give it effect. The securities who signed it on the seventh, did not then deliver it, nor was it then accepted; and if it did not take effect then, when did it? Those who signed it on the eighth were not bound on the seventh. Can a bond take effect at two different periods of time? [c] It was delivered as an *escrow*. [d]

3d. Unless the bond was a good statutory bond, the securities were not liable to the summary proceeding by motion, and damages are not recoverable of them. [e]

4th. The return of "not satisfied," on the 14th September, 1823, rendered the sheriff and the securities to the second bond liable; [f] the recourse is properly against them.

P. N. WILSON and SHORTRIDGE, for the defendant.

A party is estopped from denying a fact recited in a bond to which he is a party, or to deny the character in which he acted. [g]

The statute requiring the bond to be executed is merely directory, and an exact compliance with its directions is not material to its validity. Unless the contrary do expressly appear, the Court will presume it properly taken, when it comes from the proper place of deposite. [h]

JUDGE SAFFOLD, after stating the facts of the case, as above recited, delivered the opinion of the Court as follows :

IT is said that the facts agreed did not authorize the judgement. No objection appears to have been made as to the admissibility of any of the evidence, or the authority of the Court to determine any contested fact; but it is

JULY 1828.

M'Whorter et al
v.
M'Geh...

a Laws Ala, 717, 677, § 14, 15. 535, 536.

b 3 Calls Rep. 421 7 Cranch 287.

c 5 Bac. Ab. 159. 5 Co. 119 b. 4 John. 230. 12 John 418. d 6 Com. Law. R. 479. e Laws Ala. 446, 443,449. § 1. 678. § 18. Case of Reid et al vs. Hamilton and Wilson, decided in this Court at Jan. term 1827. f Anderson vs. Cunningham, Minor's Ala. R. p. 48.

g 1 Ch. Pl. 576. 6 T. R. 62-3. Co. Litt. 47. B 45. A. 363, B. & 58 Text. 1 Saund 325.

h 5 Bac. 159. Co. Litt. 171. B. 36. A. 6 Bac. Ab. 391, 388. 5 Com. Dig.329. 9 Cran. 28. Laws Ala. 717,667,535,660, 683.

contended, that the facts do not establish that M'Whorter was sheriff at the time the instrument, purporting to be a bond, was executed. Independently of the evidence of his election, commission and qualification, as stated by Judge Brown, the fact of his having claimed and quietly exercised the office for a considerable time, and of he and his securities having executed the office bond, containing an admission that he was sheriff, constitutes, as we conceive, an estoppel as to them, and supersedes the necessity of other evidence of the fact, as far as they only are concerned. This principle is recognized by authority presently to be noticed on the doctrine of *escrow*.

As to the question raised respecting the sufficiency of the bond, which also embraces the inquiry, whether there was any vacancy created in the office, from a failure of the sheriff at any time to give a legal bond, reference must be had to the statute of 1819, [a] the act of 24th December, 1822, [b] and a subsequent act of the same session, December 31. [c] The first statute referred to, is found to have had a limited object, and to apply only to the sheriffs who had then recently been elected as the first under the constitution, and directed that they should, on or before the *first Monday in April,* 1820, give bonds, with such number of good and sufficient securities, as should be approved of by the County Courts respectively, in such sum in addition to the sum of $4000, previously required by law, as they might deem necessary, &c.; and it further provided, that if any sheriff failed or neglected to comply, he should thereby vacate his office, and the same was thereby declared vacant. But as this sheriff came into office under the second election after the adoption of the constitution, the statute quoted does not affect the present question, unless by analogy, in shewing before whom the original bonds of sheriffs should be taken; as no previous statute is found containing that direction. The second act referred to, [d] was passed subsequent to the date of this sheriff's original bond, and prior to the second and third. It contains a general requisition that "all sheriffs then elected, or thereafter to be elected or appointed under the constitution, should, before entering on the duties of their office, give bond with such number of good and sufficient securities as may be approved of by the County Courts respectively," &c. as in the former act. It provided also, that it should "be the duty of the sheriff to

a Laws Ala. 677,
§ 14.
b Ibid. p. 535. § 4.
c Ibid. p. 685.

d Page 535.

JULY 1828.

M'Whorter et al
v.
M'Gehee.

renew his bond annually, if required by the County Court." The succeeding section provides further, "that any sheriff failing or neglecting to comply with the provisions of the preceding section, shall vacate his office, and said office is hereby declared vacated." In the construction of this statute, in relation to sheriffs, who, like the present, had previously been elected, given bond, and entered on the duties of the office, there is some difficulty. Could it have been the intention, that one thus situated should absolutely vacate his office, and forfeit his claim to it, by mere neglect to renew his bond, without any notice or requisition to that effect from the County Court, securities, or otherwise. We are drawn to the conclusion, that such could not have been the intention of the Legislature, and that such construction would produce much evil and inconvenience. Such neglect or failure, may well have been made the foundation of judicial proceedings against a sheriff, with a view to vacate his office; and probably a refusal to give a new bond, would be sufficient to afford validity to the appointment of a successor, as in case of vacancy, had advantage been claimed, and any such been made; otherwise, we think the failure could not materially affect his authority, and much less the responsibility of himself and securities. As it is not necessary to the decision of this case, we decline the expression of any absolute opinion as to the strict legal validity of the first or second bond, further than to say, there was no such forfeiture of the office, as can avoid the force of the third bond subsequently given in strict conformity to the third statute referred to. [a] The provisions of this statute are, that whenever application shall be made to the Judge of the County Court, by the securities of any sheriff, he shall issue a citation to such sheriff to appear before *him* on some day therein named, not less than ten nor more than fifteen days, then and there to enter into a new bond, &c. and if any sheriff being duly served with a citation as aforesaid, shall fail or refuse to give such bond, then the Judge shall decree the office to be vacant, and cause an entry thereof to be made on the records of the County Court.

On application and notice as contemplated, M'Whorter and these securities gave, before the Judge of the County Court, the third bond, which is now in contest. The amount of the bond is the same as the two previous

[a] Page 685.

70

JULY 1828.

Ṁ'Whorter et al
v.
Ṁ'Gehee.

bonds.　As to the objection that the same was not origi-- nally established by the County Court instead of the Judge thereof, we think the last act referred to, gave the Judge full controul of the subject, so that he could have varied the amount or form of the bond, had he found it neces- sary; and that this would be a correct construction whe- ther the two acts of 1822 used the terms "County Court" and "Judge of the County" convertibly or not.　In tak- ing such new bonds, the authority is expressly given to the Judge, and the necessity of speedy attention to the object necessarily excludes the idea of waiting for a stat- ed term of the Court; and whether the Judge suddenly assumed the capacity of a Court, and had the records present, and entries made, or not, can make no substan- tial difference.

. It is further contended, that this bond was given as an escrow.　As already shewn, it is not stated that any one signed the bond subject to any condition.　Penland only states, that he, who had not yet signed, said to the Judge, in presence of Goyne, "that he would let the bond go," the latter who had signed remaining silent.　Some of the obligors signed and sealed on the seventh; a sufficient number not appearing on that day, the bond at their re- quest, remained open until the next day, when the others signed and sealed the same for the purposes therein ex- pressed.　It was first and last left in the hands of the Judge to dispose of according to law.　It is immaterial what language or manner is adopted for the delivery of a deed, provided it be signed and sealed, and expressly, or by necessary implication, directed to the object for which it was prepared.　In this case, we think the delivery was sufficient; nor is it material that the obligors signed on different days, as it is sufficient here to date the existence of the bond from the latter day.

On the question respecting the different days on which the several obligors signed, and the effect thereof; as also whether the securities, after signing the office bond, are not estopped to deny the legality of M'Whorter's ap-

Speake &others
vs. The United
States, 9 Cranch
28.

pointment, the case cited [a] by the counsel for the defend- ant in error, is fully in point.　There it was held, that the name of an obligor may be erased from a bond, and a new obligor inserted by the consent of all the parties, without avoiding the bond.　Such consent may be proved by evidence; and it is immaterial whether the consent be

given before or after the execution of the bond.   In that
case it was also decided, that obligors were estopped to
contest the penalty of the bond, on the ground of excess,
unless it manifestly appeared to be so notwithstanding it
was taken in virtue of a statute, by an officer of the go-
vernment.   In the previous decision of the same Court, [a]
the defence was sustained on the ground of excessive pe-
nalty; but there the sum was grossly exorbitant, and ex-
torted by the officer charged with the duty of taking it,
and reluctantly given by the obligors to obtain a clearance
for the vessel.   Here it does not appear that any objec-
tion was, or reasonably could have been made to the pen-
alty of the bond.

We are of opinion, that this is a good and sufficient
bond, under the statute last referred to.   This conclusion
obviates the necessity of any examination into the dis-
criminations contended for between statutory and com-
mon law bonds.

As to the exception urged, that this sheriff had made
himself responsible for this debt, before the securities be-
came bound, inasmuch as he had failed to make a legal
return on the original execution, having only endorsed it
"not satisfied," we yet hold, as heretofore adjudged, that
this return was a nullity.   But we are equally clear, that
the sheriff's previous dereliction of duty, for which on
advantage was claimed, cannot affect the responsibility
of himself and securities for the money actually collected
subsequent to the date of this bond.

It is further objected, that a recovery in this form may
operate unequally and oppressively on such of the secu-
rities as may in the first instance be compelled to pay, as
they will not be entitled to the same summary redress
against the co-securities.   To this it is sufficient to say,
that by statute, all bonds in this State are interpreted as
joint and several, and that the obligees, or those for whose
security they are designed, may seek redress against part
or all the obligors, and the latter are left to adjust the ac-
counts between themselves according to the existing law,
whatever it may be.

In this case, judgement was ordered against the sheriff,
and such of his securities as were served with notice, or
voluntarily appeared, for the debt received with interest
and costs.   Damages were not allowed.   Goyne, one of
the securities, who was not served with notice of the mo-

JULY 1828.

M‘Whorter et al.
v.
M‘Gehee,

a   The United
States vs. Gor-
don el al.  2
Cranch 287.

JULY 1828.

M'Whorter et al
v.
M'Gehee,

tion, appeared and joined in the pleas, which is tanta-
mount to service.

We find no error in the decision of the Circuit Court;
but the judgement, as signed by the clerk below, is uncer-
tain as to the defendants embraced by it. The clerk here
is directed to correct the judgement corresponding to the
decision of the Circuit Court.

Judgement corrected at the costs of the plaintiffs in
error.

CHIEF JUSTICE LIPSCOMB and JUDGE PERRY, not
sitting.