Stockton *v.* Mechanics &c. Bank.

JOHN P. STOCKTON, Attorney-General,

*v.*

THE MECHANICS AND LABORERS SAVINGS BANK.

A savings bank, under a special charter, was authorized to receive and invest deposits for the benefit of the depositors, the income or profit to be divided among them, after reasonable deductions for necessary expenses, the principal to be repaid to the depositors at such times and with such interest and under such regulations as the board of managers should, from time to time, prescribe. Under their regulations they not only received deposits participating in the profits and not payable except on thirty days' notice, but also another kind of deposits (called by them "special deposits") which were not to participate in the profits, and were to be repaid (not redelivered) to the depositors, without any preliminary notice. Both kinds of deposits were intermingled in the funds of the bank, undistinguishably. Under insolvent proceedings, a receiver was appointed.—*Held,*

(1) That such an institution is a mere trustee for the benefit of the depositors.

(2) That a depositor who borrowed money from the bank, secured by his note or mortgage, cannot offset his debt against the amount of his deposit at the time when the decree of insolvency was made.

(3) That the so-called "special" depositors are not entitled to priority in payment over the other class of depositors.

(4) That debts and expenses contracted by the bank in carrying on its ordinary business, are to be preferred.

(5) That a claim, under a covenant in the lease, for rent accruing after the surrender of the premises to the lessor by the receiver, cannot be maintained.

(6) That money paid to the bank in exchange for its check, given for the accommodation of the payee, which was dishonored, presumably went into the funds, and the debt should be preferred.

(7) That checks given to depositors, on account of deposits, are not to be preferred.

In insolvency. On petition of the receiver for directions.

*Mr. W. B. Williams,* the receiver, *in pro. pers.*

*Mr. C. L. Corbin* and *Mr. H. Wallis,* for creditors.

THE CHANCELLOR.

The Mechanics and Laborers Savings Bank was incorporated by an act of the legislature, approved March 3d, 1869. (*P. L. 1869 p. 177*). It was empowered to receive from any person or persons disposed to obtain and enjoy the advantage of the institution, any deposit or deposits of money, and to use and improve the same for the purposes and according to the directions mentioned in the act, and to accept and execute all such trusts of every description, and to receive any moneys that might be committed or given to it by last will, or by any order of any court or otherwise. And it was provided by the act that all deposits of money received by the corporation should be by it used and improved to the best advantage, and that the income or profit thereof should be by it applied and divided among the persons making the deposits, their executors or administrators, in just proportion, after reasonable deductions for necessary expenses, and that the principal sums should be repaid to the depositors, their executors or administrators, at such times and with such interest and under such regulations as the board of managers should from time to time prescribe. The securities on which the investments should be made were specified.

The institution entered upon its business pursuant to the authority conferred by its charter. It received deposits under two different regulations, one of which provided for receiving deposits which should participate in the profits of the investments, which deposits were to be payable only on thirty days' notice to the institution, unless notice should be waived, and the other provided for the receipt of deposits which should not participate in the profits, but should be payable on demand. These latter were called "special," and though kept in separate books, the funds of both kinds of deposits were undistinguishably intermingled. The corporation having become insolvent, and unable to return to its depositors in full the moneys due them, a receiver of its property was appointed by this court. He submits for

direction in the administration of his trust the following questions:

1. Whether, where a depositor becomes a debtor of the institution for a loan secured either by note or bond and mortgage, he is entitled to offset the amount of his deposit, whether of the one or the other of the above classes, against the money due on the note or bond and mortgage.

2. Whether the so-called "special" deposits above mentioned are entitled to preference in payment over those of the other class.

3. Whether the debts of the institution for money borrowed in the course of its business, debts due for brokers' commissions &c., and incidental expenses generally, are entitled to preference over the claims of depositors.

4. Whether the rent on a lease of a store &c., the term under which had not expired when the decree in insolvency was made, is payable after the time when the receiver delivered up the premises to the lessor.

5. Whether a claim for money paid to the institution in exchange for its check or draft which was dishonored, is entitled to preference.

6. Whether a depositor is entitled to preference for the amount of a check given for a deposit, payment of which was refused by the bank on which it was drawn, for want of funds.

It is necessary, in the decision of some of these questions, to take into consideration the character of the institution. It is a mere trustee. *Newark Savings Institution Case, 1 Stew. 552.* It was said in that case (the institution was of the same character as this) that the design of the legislature in granting the charter was to promote industry and frugality, and preserve and husband the fruits of honest toil; that it contemplated no benefit to the managers, but looked only to the security and advantage of the depositors; that the trust thus created was a general or public trust; that no depositor had, under the charter or in equity, any right to any particular security in the hands of the institution for

his deposit, any more than any other depositor, and that all the assets, after deducting necessary expenses, were held as a common fund for the security of all the depositors. A savings bank is defined to be any institution in the nature of a bank, formed for the purpose of receiving deposits of money for the benefit of the persons depositing, to accumulate the produce of so much thereof as shall not be required by the depositors, at compound interest, and to return the whole or any part of such deposit, and the produce thereof, to the depositors, deducting out of such produce so much as shall be required for the necessary expenses attending the management of the institution, but deriving no benefit whatever from any such deposit or the produce thereof. *Grant on Banking 614.*

In *Huntington* v. *Savings Bank, 6 Otto 388,* it was said that such a corporation is not a commercial partnership, nor an artificial being, the members of which have property interests in it, nor is it strictly eleemosynary; that its purpose is rather to furnish a safe depository for the money of those members of the community disposed to entrust their property to its keeping; that it is somewhat of the nature of such corporations as church-wardens, for the conservation of the goods of a parish; the college of surgeons, for the promotion of medical science; or the society of antiquaries, for the advancement of the study of antiquities, and that its purpose is a public advantage, without any interest in its members..

In a still more recent case (1879) *Burrell* v. *Dollar Savings Bank (Sup. Court of Penn.),* such institutions are said to be really charities for the benefit of the poor.

In *Coite* v. *Society for Savings, 32 Conn. 173,* they were said to be in fact large incorporated agencies for receiving and loaning money on account of its owners. As before stated, this court has held them to be trusts, and therefore subject to its control. Such being their character, it is obvious in some respects the rules which would apply to other financial institutions in winding them up will not apply to them.

The fact that one of the *cestuis que trust* has borrowed from the trust money, which in fact is the common property of himself and his fellow-depositors, and continues to owe it at the time of the making of the decree of insolvency, will not give him any advantage over the other depositors. Like any stranger, he is bound to pay the money to the receiver, and he is entitled only to his dividend with the other depositors. If three persons, jointly owning $3,000, place the sum in the hands of a trustee for investment for their joint account, and he lends to one of them, as an investment, $1,000 of the fund thus created, and then wastes the balance and becomes wholly insolvent, would it be, for an instant, thought that the borrower had the right in equity to offset his demand against the trustee—his claim to one-third of the trust fund—against his debt, and so secure for himself immunity from loss, throwing the entire burden of the misfortune on the other *cestuis que trust?* If a savings institution, carefully and honestly managed, should meet with loss by the depreciation of its securities, can it justly and equitably be held that a depositor who has borrowed the trust funds to the amount of his deposit, has thus secured himself against the loss? It is clear that the borrower in such case must, in equity, be held to be bound to pay his debt, and take his dividend of his deposit and its accretions.

In *Bunnell* v. *Collinsville Savings Society, 38 Conn. 203*, in an action by a depositor against a savings bank, to recover his *pro rata* share of a loss sustained by the bank, it was held that the bank was merely his agent to receive and hold his money; that the loss was occasioned by the plaintiff's own act, through the instrumentality of his agent, the bank, and that he was not entitled to recover. The loss in that case amounted to twenty-four per cent. of the deposits. The bank had paid to the plaintiff his *pro rata* share of the remaining funds, but he had not accepted it in full satisfaction of his claim for his deposit. The court said: "The assets this institution now has, belong substantially to the

present depositors. How can the plaintiff obtain his loss? Shall he be paid out of their money? They have an equal right to be paid out of his." This reasoning is obviously applicable to the question of offset under consideration. In *Osborn* v. *Byrne, 43 Conn. 155,* it was held that where a depositor in a savings bank was indebted to the bank as a borrower of its funds, he could not, upon its insolvency, set off, in the absence of an agreement, the amount of his deposit against his indebtedness.

The so-called special deposits are equally trust money with those held for investment. The difference between them is, that they might have been withdrawn at will from the institution, while the institution might have required thirty days' notice before being required to pay those of the other kind. That there was no participation in the profits of the investment, makes no difference. Had the agreement been that the special deposits should be returned in the same coin or bills received—had they been mere deposits for safe keeping, the owners would not have parted with their property in them, and the bank would only have acquired a qualified property as bailee in them. But they were delivered to the bank in the same manner as the other deposits, and the obligation of the bank in regard to them was answered by the return to the owner of an equal amount of money on demand. The bank received them as deposits under the authority of its charter, and not otherwise; and, in fact, intermingled them inseparably and undistinguishably with the money received from deposits for investment.

The debts of the institution, contracted in the course of its business, for loans and for incidental expenses, are entitled to preference over the claims of depositors. They are the expenses of executing the trust.

The object of the proceedings in insolvency, under the act, is to distribute the estate of a debtor corporation, no longer able to pay its debts in full, equitably among its existing creditors. The covenant to pay rent in the future is, in fact, valueless by reason of the insolvency, for the cove-

nantor will have no property to answer its liability thereon. The bankrupt law of the United States provides for the proving of rent or other debts falling due at fixed and stated periods up to the time of the bankruptcy. But whether the covenant be valueless or not, the debt to be proved cannot include rent to become due. The claim, under the covenant in the lease, for rent accruing after the surrender of the premises to the lessor by the receiver, cannot be maintained. *Pratt* v. *Levan, 1 Miles 358; Burrill on Assignments 491.*

The liability of the receiver in insolvency in such case is precisely the same as that of an assignee in insolvency or bankruptcy, who may retain or surrender the lease according as it may seem most advantageous for the estate of the debtor.

The money delivered to the institution in exchange for its check, which was dishonored for want of funds in the bank on which it was drawn, presumably went into the funds which are to be distributed by the receiver. The transaction was strictly *ultra vires.* The exchange of the money for the check was merely for the accommodation of the person who obtained the latter. Under the circumstances, the debt should be preferred.

Not so, however, as to the checks given to depositors, which were not paid for want of funds in the bank on which they were drawn. The checks, under the circumstances, were no payment, and the deposits remain the same as if the checks had not been given. The depositors to whom they were given are entitled to no preference because of them.