The facts in this case are as follows:
On October 19th, 1923, the Hoffman Realty Company and the Donald Company entered into a lease covering premises, 161-63 Springfield avenue, Newark, New Jersey, for a period of twenty years and ten months.
In addition to the rent, the tenant was required to pay, among other things, all taxes assessed against the property. The lease also provided that upon its termination the premises were to be restored to their original condition.
The lease was thereafter assigned to the Bell Furniture Company, which assumed performance thereof.
On May 23d 1931, Eugene Bloch, the president of the defendant company, filed a bill of complaint, stating that the corporation had been conducting its business at a great loss and could not continue its business to the welfare of *Page 357 
stockholders and creditors, and upon the filing of the bill an answer was filed by the Bell Furniture Company and all stockholders admitting the allegations of the complainant and consenting to the appointment of a receiver.
The order appointing receiver enjoined and restrained the defendant corporation from further exercising any of its privileges or franchises and from collecting or receiving debts or paying the same, and further recited that the receiver was appointed pursuant to the provisions of the "Act concerning corporations (Revision of 1896)," with the acts supplementary thereto and amendatory thereof.
The receiver took possession of the assets of the defendant corporation and undertook the liquidation thereof. The receiver remained in possession of the rented premises for a short time and then abandoned the same. The Hoffman Realty Company filed its claim which is the basis of the appeal.
There are four items in the claim:
First, the rent for the month of July, 1931, when the receiver was in possession. This was allowed by the receiver and is not disputed by him.
Second, a proportionate share of the taxes for 1931, which under the lease the tenant agreed to pay. The receiver admits the claim up to July 2d 1931. This amount only should be paid.
Third, a claim for the estimated cost to restore the building to the condition in which it was at the beginning of the lease. Said claim being based upon a provision in the lease that the tenant undertook to restore the premises; and the amount claimed under this item is $30,500 and such amount was arrived at on the basis of testimony by an expert, and architect who testified before the receiver as to the probable cost of such restoration.
Fourth, damages for the breach of the covenant to pay rent for the entire remainder of the term, amounting to $101,875. This amount was arrived at upon the basis of proof submitted before the receiver, showing the rental value *Page 358 
of the premises for the balance of the term, in the opinion of experts, and deducting that amount from the amount agreed to be paid according to the terms of the lease from August 1st, 1931, to the end of the lease.
It seems clear to me that a claim under a covenant in a lease for rent accruing after the surrender of the premises to the lessor by the receiver cannot be maintained. The leading case in this state is Stockton v. Mechanics and Laborers Savings Bank,32 N.J. Eq. 163. The receiver asked the instructions of the court, upon, inter alia, the following question:
"Whether the rent on a lease of a store, c., the term under which had not expired when the decree in insolvency was made, is payable after the time when the receiver delivered up the premises to the lessor."
Chancellor Runyon said, pages 168 and 169:
"The object of the proceedings in insolvency, under the act, is to distribute the estate of a debtor corporation, no longer able to pay its debts in full, equitably among its existing creditors. The covenant to pay rent in the future is, in fact, valueless by reason of the insolvency, for the covenantor will have no property to answer its liability thereon. The bankrupt law of the United States provides for the proving of rent or other debts falling due at fixed and stated periods up to the time of the bankruptcy. But whether the covenant be valueless or not, the debt to be proved cannot include rent to become due. The claim, under the covenant in the lease, for rent accruing after the surrender of the premises to the lessor by the receiver, cannot be maintained. Pratt v. Levan, 1 Miles 358; Burrill Ass. 491.
"The liability of the receiver in insolvency in such case is precisely the same as that of an assignee in insolvency or bankruptcy, who may retain or surrender the lease according as it may seem most advantageous for the estate of the debtor."
In Klein v. W.A. Gavenesch Co., 64 N.J. Eq. 50,
Vice-Chancellor Pitney held: *Page 359 
"A lessor in a lease for a term of years, at a designated annual rental, which gives the lessor the right of re-entry in case of a failure to pay the rent, is not entitled, on the insolvency of the lessee, to demand from the receiver the rent accruing under the lease after the receiver quits the premises."
In Nelkin v. Carencon, Inc., 108 N.J. Eq. 42,
Vice-Chancellor Backes said (at p. 45):
"New Jersey Claude Neon Corporation claim $889.10 for rent of an electrical display and repairs to the same were allowed for $264.10. The lease was for sixty months at $125. The apparatus was to remain the property of the lessor and to be removed by it when the lease ended. At the time of the lease $625 was paid which was to be credited on the last five months' rent. In the meanwhile it was held as security. The rent having ceased upon the appointment of the receiver in insolvency (Stockton v. TheMechanics and Laborers Savings Bank, 32 N.J. Eq. 163; Klein v.W.A. Gavenesch Co., 64 N.J. Eq. 50), the security must be applied to the rent due. Butler v. Commonwealth Tobacco Co.,74 N.J. Eq. 423."
If the claim be treated as one for unliquidated damages, it is not allowable or provable. When a corporation is forced into liquidation by circumstances over which it has no control, its executory contracts become void. The creditor is deprived of the right to recover damages for non-performance. This is on the theory that the possibility of such dissolution constitutes an implied condition in all such contracts. Ely v. Van KannelRevolving Door Co., 184 Fed. Rep. 459; Tennis Bros. Co. v.Wetzel and Tyler Railway Co., 140 Fed. Rep. 193 (affirmed,145 Fed. Rep. 458; 75 C.C.A. 266; 7 Ann. Cas. 426); Schlieder v.Dielman, 44 La. Ann. 462; 10 S. 934; People v. Globe MutualLife Insurance Co., 91 N.Y. 174; Lenoir v. Linville ImprovementCo., 126 N.C. 922; 36 S.E. Rep. 185; 51 L.R.A. 146; Tiffin GlassCo. v. Stoehr, 54 Ohio St. 157; 43 N.E. Rep. 279; WilliamsonCounty Banking and Trust Co. v. *Page 360 Roberts-Buford Dry Goods Co., 118 Tenn. 340; 101 S.W. Rep. 421;9 L.R.A. (N.S.) 644; 12 Ann. Cas. 579; Bracken v. Williamand Mary College, 5 Va. 161; Griffith v. Blackwater Boom andLumber Co., 46 W. Va. 56; 33 S.E. Rep. 125.
It follows, therefore, that a receiver is not bound by the executory contracts of the corporation. He may abandon or repudiate them without imposing any liability upon the assets in his hands. U.S. Trust Co. v. Wabash Western Railway Co.,150 U.S. 287; 14 Sup. Ct. 86; 37 L.Ed. 1085; Malcomson v. WappooMills, 88 Fed. Rep. 680; Chas. E. W.F. Peck, Ltd. v.Southwestern Lumber and Exporting Co., 131 La. 177; 59 S. 113;Wells v. Hartford Manilla Co., 72 Conn. 27; 55 Atl. Rep. 599;Fell v. Securities Co. of N.A. (Del.Ch.),97 Atl. Rep. 610; Casey v. Northern Pacific Rairoad Co., 15 Wn. 450;48 P. 53; Scott v. Rainier Power and Railway Co., 13 Wn. 108;42 P. 531.
The solvency or insolvency of the company has no bearing on the present case. See In re New Jersey Refrigerating Co., 95 N.J. Eq. 215.
In Chas. H. Horne Co. v. Frederick Harrington,Inc., 87 N.J. Eq. 227, Vice-Chancellor Lane said:
"It appears that Frederick Harrington, Incorporated, has been dissolved. Proceedings in dissolution were taken in December, 1915. They did not become effective until December, 1916. Since that time the directors of the company, who are all non-residents at this time, have been acting as trustees under the statute. They have collected in the assets of the company and the charge of the bill, supported by affidavits, is that payments have been made to some creditors in larger proportionate amounts than to others, resulting in what may in the end be preferences. This statement is not met by the defendant with any convincing proof. * * * It is contended that under the statute the trustees may make such payments as they see fit, provided the company is not insolvent. The difficulty with the situation is that one cannot *Page 361 
tell whether in the end there will be sufficient to pay all or not. The outstanding claims amount to approximately $42,000. The outstanding assets amount to about $70,000. Of these some $36,000 are accounts receivable, and some $30,000 bills receivable, admittedly slow of collection. There is only at this time in the hands of the trustees some $4,000 in cash. It would be dangerous to conclude that the assets will in the end realize sufficient to pay all the debts. There are too many contingencies, and, in the exercise of good business judgment, we have no right to assume that they may realize sufficient to pay all, and therefore that they may increase the payments of some creditors over others. * * *
"I will appoint a receiver."
The situation in that case is duplicated here. At the time of the filing of the bill the book accounts were sufficient to meet all liabilities (except this one) if the accounts receivable were fully collected. Whether they will be in these times of financial depression remains to be seen.
The provability or allowability of such a claim as this is to be tested by the rule applicable in bankruptcy cases as was held in Stockton v. Mechanics and Laborers Savings Bank, supra.
Therefore the following federal cases apply:
In In re Roth and Appel, 181 Fed. Rep. 667; 104 C.C.A. 649; 31L.R.A. (N.S.) 270, the court said:
"Rent is a sum stipulated to be paid for the use and enjoyment of land. The occupation of the land is the consideration for the rent. If the right to occupy terminates, the obligation to pay ceases. Consequently, a covenant to pay rent creates no debt until the time stipulated for the payment arrives. The lessee may be evicted by title paramount or by acts of the lessor. The destruction or disrepair of the premises may, according to certain statutory provisions, justify the lessee in abandoning them. The lessee may quit the premises with the lessor's consent. The lessee may assign his term, with the approval of the lessor, so as to relieve himself from further obligation upon the lease. In all these cases the lessee is discharged from his covenant to pay rent. *Page 362 
The time for payment never arrives. The rent never becomes due. It is not a case of debitum in praesenti, solvendum in futuro.
On the contrary, the obligation upon the rent covenant is altogether contingent. Watson v. Merrill, 69 L.R.A. 719;69 C.C.A. 185; 136 Fed. Rep. 362. See, also, Co. Litt. 292b; Wood
v. Partridge, 11 Mass. 492; Bordman v. Osborn, 23 Pick. 299.
"It follows from these principles that rent accruing after the filing of a petition in bankruptcy against the lessee is not provable against his bankrupt estate as a `fixed liability * * * absolutely owing at the time of the filing of the petition,' within the meaning of section 63 a (1) of the Bankruptcy act of 1898. It is not a fixed liability, but is contingent in its nature. It is not absolutely owing at the time of the bankruptcy, but is a mere possible future demand. Both its existence and amount are contingent upon uncertain events. Watson v.Merrill, supra; Atkins v. Wilcox, 53 L.R.A. 118;144 C.C.A. 626; 105 Fed. Rep. 595. Also In re Rubel (D.C.),166 Fed. Rep. 131; In re Mahler (D.C.), 105 Fed. Rep. 428; In re Hays,F. W. Co. (D.C.), 117 Fed. Rep. 879; In re Arnstein
(D.C.), 101 Fed. Rep. 706; In re Jefferson (D.C.),93 Fed. Rep. 948; In re Inman (D.C.), 171 Fed. Rep. 185."
It was held in Watson v. Merrill, 136 Fed. Rep. 359;69 L.R.A. 719, that:
"Damages for the breach of a contract of the bankrupt to pay rent at times subsequent to the filing of a petition in bankruptcy do not constitute a provable claim, for the same reason that the claim for the rents is not provable."
 * * * * * * * *
"Where a bankrupt was tenant of property under a lease which gave the landlord the right to re-enter and to resume possession if the lessee should be `declared bankrupt or insolvent according to law,' and the lessee covenanted that in case of such a termination of the lease he would `indemnify the lessor against all loss of rent or other payments which he may incur by reason of such termination during the residue *Page 363 
of the term; and the landlord re-entered upon the bankruptcy of the tenant, it was held that he could not prove a claim against the estate of the tenant in bankruptcy for the difference between the present letting value of the premises for the remainder of the term and the stipulated rent for that period, there being no breach of the covenant of indemnity until after an actual loss of rent, and then only to the extent of such loss. In re Ells,98 Fed. Rep. 967; 3 Am. Bankr. 564." See, also, In re Arnstein,101 Fed. Rep. 706, and In re Mahler, 105 Fed. Rep. 428;affirming, 2 N.B.N. Rep. 70.
Counsel for receiver argues that the claimant should establish his right, if any, at law. It is unnecessary to discuss that point here or any others raised in the briefs because, as I have said, the claim is not allowable or provable before a receiver in this court. The receiver was correct in his disallowance of the claim. I will advise a decree upholding his decision. *Page 364