AUGUST KLEIN et al.

*v.*

W. A. GAVENESCH COMPANY, an insolvent corporation.

[Submitted November 4th, 1902. Decided November 12th, 1902. Filed January 26th, 1903.]

A lessor in a lease for a term of years, at a designated annual rental, which gives the lessor the right of re-entry in case of a failure to pay the rent, is not entitled, on the insolvency of the lessee, to demand from the receiver the rent accruing under the lease after the receiver quits the premises.

On appeal from the refusal of the receiver to allow a claim on behalf of Albert I. Drayton.

The rejected claim was for $2,535 for rent of the stores known as Nos. 548 and 550 Newark avenue, Jersey City, with frame stable in the rear, from February 1st, 1902, to May 1st, 1905, at $780 a year, according to the terms of a lease made between the parties on the 21st of April, 1900, and a supplement thereto.

The lease in question lets the premises to the insolvent corporation for five years from the 1st day of May, 1900, at the yearly rental of $720, which, by a supplement, was increased to $780, with an express covenant on the part of the insolvent corporation to pay rent, and a clause giving the lessor the right of re-entry in case of a failure to pay or to perform any of the covenants, with a covenant by lessor for quiet enjoyment; also that the lessee should occupy the stores for its business as wholesale grocers and not otherwise; with a further clause preventing the sale of the business or the transferring of the lease without the consent of the lessor.

The corporation went into the hands of a receiver on March 1st, 1902, and the receiver took and held possession of the business and the leased premises until April 1st, 1902, and paid the rent during that time as a part of the expense of settling the estate, and on the day last named sent the keys of the stores to the appellant, so that the claim is reduced to the amount accruing and to accrue since April 1st, 1902.

The claim was presented on March 24th, 1902, seven days before the receiver quit possession, and was acted on adversely by the receiver on October 15th.

The written argument of the appellant states that from April 1st to the time of presenting the petition of appeal the premises have stood vacant, because the appellant was unable to rent the same. It was agreed that whatever in the nature of possession the appellant took was not of such a character as to operate as a surrender of the premises or a waiver of his right to demand payment of the rent reserved by the lease and covenanted to be paid by the insolvent corporation.

*Mr. Charles C. Black,* for the appellant.

*Mr. Robert S. Hudspeth,* for the receiver.

PITNEY, V. C.

If I properly understand the report of the case of *Stockton* v. *Mechanics Bank, 5 Stew. Eq. 163,* the question presented by this appeal is *res judicata* in this court. That was a suit to wind up a savings bank, and the receiver asked the direction of the chancellor as to several matters which arose in the course of the administration of the estate, and the questions were argued before him by the receiver himself and by counsel for the creditors of the estate. One of the matters submitted was this : Whether the rent on a lease of a store, &c., the term under which had not expired when the decree in insolvency was made, is payable after the time when the receiver delivered up the premises to the lessor. The report does not distinctly and expressly state that the insolvent corporation in that case was the lessee and covenantor to pay the rent; but I think it fairly to be inferred that it was such lessee. The depositors in the insolvent corporation, which was a savings bank, were of the nature of stockholders and stood on an equal footing, and were entitled to have divided among them what remained after the ordinary debts of the bank were paid; and the argument before the chancellor seems to have gone on the basis that there were sufficient assets to pay all the ordinary creditors in full and leave something to be divided among the depositors; so that the question was not whether the lessor should receive a dividend on his claim for rent, but whether he should be paid anything; for if he was paid anything, he would be paid in full. See *Hannon* v. *Williams, 7 Stew. Eq. 255* (at *p. 260*), in the court of errors and appeals, and *Una* v. *Dodd, 12 Stew. Eq. 173* (at *pp. 182, 183*), in this court.

If I am right in my construction of the report, it would seem that the answer of the chancellor to the question so propounded must be decisive of the present case. That answer was as follows : "The object of the proceedings in insolvency, under the act, is to distribute the estate of a debtor corporation, no longer able to

pay its debts in full, equitably among its existing creditors. The covenant to pay rent in the future is, in fact, valueless by reason of the insolvency, for the covenantor will have no property to answer its liability thereon. The Bankrupt law of the United States provides for the proving of rent or other debts falling due at fixed and stated periods up to the time of the bankruptcy. But whether the covenant be valueless or not, the debt to be proved cannot include rent to become due. The claim, under the covenant in the lease, for rent accruing after the surrender of the premises to the lessor by the receiver cannot be maintained."

That seems to be the view taken of the decision by Vice-Chancellor Reed in *Bolles* v. *Crescent Drug and Chemical Co.; 8 Dick. Ch. Rep. 614* (at *p. 620*). (At *p. 618 et seq.* the learned vice-chancellor states clearly and accurately the present condition of the law on this subject.)

But it does not appear that the claimant of the rent in *Stockton* v. *Mechanics Bank* was represented by counsel before the chancellor; and the authority which he cites (*Burrill Ass. § 374*) does not sustain the rule laid down by him in all its length. The learned author did not there have in view a claim made by a lessor upon a covenant made by the insolvent corporation to pay rent *in futuro*. On the contrary, it is plain that he did have in view something quite distinguishable, namely, a large class of cases which hold that a receiver in insolvency, or an assignee in bankruptcy, does not, as the result of the making to him, by operation of law or by express words, of an assignment of a leasehold estate previously vested in the insolvent, become liable by virtue of privity of estate as assignee to pay the rent reserved upon the lease.

There is a long line of cases in England, and also in the United States, sustaining the latter proposition. In the supreme court of the United States: *Glenny* v. *Langdon, 98 U. S. 20* (at *p. 30,* bottom; *p. 31,* top); *American File Co.* v. *Garrett, 110 U. S. 288; Sparhawk* v. *Yerkes, 142 U. S. 1* (at *p. 13*); *Sunflower Oil Co.* v. *Wilson, 142 U. S. 313* (at *p. 322*), and *Quincy, &c., Railroad Co.* v. *Humphreys, 145 U. S. 82* (at *p. 99*), and cases there cited. In Pennsylvania: *Pratt* v. *Levan, 1 Miles*

*358* (cited by Mr. Burrill), and *Bosler* v. *Kuhn, 8 W. & S. 183.*
In Massachusetts: *Hoyt* v. *Stoddard, 2 Allen 442,* and *Common-
wealth* v. *Franklin Insurance Co., 115 Mass. 278.* The authori-
ties cited by the learned judge for his conclusions in the last-
named cases, besides *Hoyt* v. *Stoddard, supra,* were *Turner* v.
*Richardson, 7 East 335,* and other English cases cited in *2 Platt
Leas. 433 et seq.* It does, however, appear, as I understand the
report of *Commonwealth* v. *Franklin Insurance Co.,* that the
claim was based directly upon the covenant contained in the
lease, but the circumstances were peculiar. Be that as it may,
that is the only American case which I can find, beside that in
*5 Stew. Eq.,* which, in appearance even, sustains the latter case.

Chancellor Walworth, in dealing with the question, in *Martin*
v. *Black, 9 Paige 641,* alludes to the English cases, and uses this
language: "If the assignee elects to waive the term, and neither
enters upon the demised premises nor does any other act signify-
ing his acceptance of the term as assignee, he is not liable for
the rent; and the lessor must come in as a general creditor of the
bankrupt's estate, or may sue the bankrupt for the rent subse-
quently accrued," citing the cases. But it is proper here to re-
mark that in none of the older English cases has any such claim
made against the assets of the insolvent been countenanced.

The explanation of this state of the law is found in the terms
of the old English Bankrupt law, which discharged the bankrupt
from liability only on debts due at the date of the bankruptcy,
and left him liable for those accruing subsequently; and the
English courts, in applying that provision to covenants to pay
rent *in futuro,* refused to classify such covenants as *debitum in
præsenti, solvendum in futuro,* on the ground, presumably, that
the rent accrued *die in diem,* and arose out of the land itself.
Hence they held that the rent to accrue upon the bankrupt's
covenant after the act of bankruptcy was not provable against
the bankrupt's estate, and the bankrupt himself was not dis-
charged from his liability thereon. This ruling gave rise to the
line of cases cited in *2 Platt Leas.,* and which were followed by
those in this country above cited.

This rule occasioned so much inconvenience and injustice that

it was altered by the act of 1869. *32 & 33 Vict. ch. 71 § 23,* printed in a note to the case of *Ex parte Llynvi Coal and Iron Co., L. R. 7 Ch. App. 28 (1871).* That section provided, in substance, *inter alia,* for the actual surrender of a lease by the trustee in bankruptcy, and against the will of the lessor, at any time, notwithstanding his having taken possession under it, and for the discharge of the bankrupt from liability upon his covenants for rent; and then, by a final clause, provided a remedy as follows:

"Any person injured by the operation of this section shall be deemed a creditor of the bankrupt to the extent of such injury, and may, accordingly prove the same as a debt under the bankruptcy."

Under that clause the court, in the case just cited, allowed a claim for damages for injury for the loss of a lease of land.

In Pennsylvania the same sort of relief was granted in *Sweatman's Appeal, 150 Pa. 369.*

In New York the ruling has been in accordance with the equity of the English statute. *Underhill* v. *Collins, 132 N. Y. 269 (Court of Appeals)*; *People* v. *St. Nicholas Bank, 151 N. Y. 592,* decided in 1897. There the St. Nicholas Bank failed while it was lessee of an unexpired term of a banking-house on Wall street, for which it was paying a rent of $12,000 a year. After it vacated the premises the landlord, pursuant to a right reserved in the lease, relet it at $9,000 a year, and made a claim against the receiver for the difference in rent—$3,000 a year for three years—and the claim was allowed.

This review of the law leads me to the conclusion that the appellant's claim, in its present shape, must be rejected—*first,* on the authority of *Stockton* v. *Mechanics Bank, supra,* and *second,* because, independent of the authority of that case, I can find no principle upon which it can be sustained in its present shape and amount. I cannot assume upon the facts admitted before me that the leasehold is of no value whatever. The claim, therefore, must be disallowed, without prejudice, however, to the right of the claimant to present a new claim based upon equitable principles.

Before dismissing the case I desire to refer to a consideration

presented by the counsel for the receiver in his written argument. It is this: That the object of the statute governing this proceeding is to make an equal distribution of the estate of the insolvent among its creditors; that the ordinary creditor is one who has already given full value for his debt, as for money loaned, work and labor done, or goods sold and delivered. The consideration of the debt has fully passed out of the creditor to the debtor, and the creditor receives a dividend only upon it; that a claim for rent payable *in futuro* is, as counsel argues, distinguishable from the ordinary class of debts in that the rent has not been, so to speak, earned; and in this he is supported by the ruling of the English courts in administering their Bankruptcy act, as before stated. He then argues, and with much force, that if the claimant's claim is to be allowed in full it must be upon the basis that the term is completely vested in the receiver, and that the rent is all paid up to the end of the term, with the result that the allowing the lessor in this case, or in any such case, to prove his claim and be allowed a dividend for rent yet to accrue will amount to a satisfaction of the rent, so that the beneficial interest for the whole of the remainder of the term will vest absolutely in the receiver for the benefit of the creditors at large. He argues that this is as it should be; and he calls attention to the circumstance that the lease here in question does not contain a clause, as did that in the *St. Nicholas Bank Case,* allowing the lessor to enter and relet the premises and credit the amount which he should receive upon such a letting upon the amount reserved by the original lease; and he argues that the law governing the relation of landlord and tenant is such that the lessor cannot, in the absence of such a clause, re-enter and hold the premises as security for the amount to accrue upon the original lease; that such re-entry terminates the estate and the right to rent.

There is great force in this argument; but I do not find it necessary to arrive at or express any definite conclusion upon it.

I will advise an order to the effect above stated, and that will leave the case in such a condition that my conclusion may be reviewed by a higher court.