PHILIP DAAB

*v.*

THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD
COMPANY.

[Decided December 22d, 1905.]

1. The jurisdiction of equity to decree an accounting cannot be sustained on the sole ground that the bill prays for a discovery.

2. A bill in equity for an accounting, where equitable jurisdiction is claimed because of the intricacy and complexity of the account, must show that the remedy at law is in fact inadequate.

3. A bill for an accounting does not show equitable jurisdiction on the ground of fraud by allegations that defendant endeavored to deceive complainant as to the amounts involved, where it appears that complainant was not deceived.

On demurrer to bill for an accounting.

*Mr. James B. Vredenburgh,* for the demurrant.

*Mr. Leon Abbett,* for the complainant.

STEVENSON, V. C.

The demurrer will be sustained.

1. The primary rights which the complainant seeks to enforce in this suit are all strictly legal rights arising from contractual obligations of the defendant, express or implied.

The courts of law of the state have full jurisdiction of every item of the complainant's claim, and also have full jurisdiction of these items when taken together in a mass as constituting a single case for adjudication. A court of equity, on the other hand, has no jurisdiction whatever of any item of the complainant's claim when taken by itself alone, but at most can only acquire concurrent jurisdiction with the courts of law of the

aggregated mass of items which make up the complainant's claim, in case it shall appear that this entire claim is so intricate and complex that the legal machinery of courts of law is not competent to deal with it so that the remedy at law has become inadequate.

2. While the bill may be open to criticism, I think on a general demurrer it must be taken as presenting a case the trial of which may involve the proof of a very large number of items of various classes. The greater part of the claim is based upon a written contract between the parties, under which the complainant transferred freight of all kinds between the boats and barges of the complainant and its wharves and docks and other landing places. The contract specified as the complainant's compensation twenty-five cents per ton for hides and ten cents per ton for other freight. The amount of freight thus handled was between thirteen thousand five hundred to fourteen thousand five hundred tons per week during five years. The term of the contract, five years, expired May 1st, 1905, and the bill was filed on June 22d, 1905.

The entire claim of the complainant consists of the following elements:

(1) A claim for money due under the contract for stevedore work done thereunder.

(2) A claim for extra work amounting to $3,601.09, of which both parties kept an account, the bill alleging "that the accounts of said extra work are complicated and intricate, being accounts of laborers' time in handling freight, sorting freight, and for other extra work on freight of said defendant."

(3) A claim for damages by reason of the action of the defendant in giving work which the complainant was entitled to do under his contract to other parties.

The contract excepted from its operation the transfer of freight "at the freight stations of the company." The bill alleges that the defendant established "new and additional freight stations for itself, and would not allow or permit" the complainant "to perform the stevedore work at said new stations," and thereby unlawfully deprived the complainant of large

gains. A question of the construction of the contract, if there be any question, is here raised.

The bill also sets forth that the defendant made deductions from the moneys due the complainant on account of damages which the defendant alleged it had suffered from negligent handling of goods by the defendant.

3. Inasmuch as the primary rights of the complainant for the enforcement of which this suit is brought are strictly legal, the mere fact that the bill prays for a discovery presents no ground for extending the jurisdiction of this court to compel the defendant to account. *1 Pom. Eq.* §§ *223, 230; Brown* v. *Edsall, 9 N. J. Eq. (1 Stock.) 256 (1852)* ; *Little* v. *Cooper, 10 N. J. Eq. (2 Stock.) 273 (1854)* ; *United, &c., R. R. Co.* v. *Hoppock, 28 N. J. Eq. (1 Stew.) 261, 264 (1877)* ; *Foley* v. *Hill, 2 H. L. Cas. 28, 37 (1848)*.

The allegations in the bill to the effect that the complainant kept no account, except for his extra work, and that the defendant has books and papers from which complete accounts may be obtained, but which it refuses to exhibit to the complainant, do not help out the jurisdiction in this case. The bill does not allege that the defendant was under any obligation to keep accounts for the complainant's information, or that the complainant was not able to keep accounts for himself. The courts of law of New Jersey have ample power to give the complainant access to the defendant's books, if those books are instruments of evidence in his case, and the complainant may file a bill in this court for discovery alone in aid of his action at law.

4. The bill prays for an answer without oath. If the jurisdiction of this court in a case like this could be extended because the complainant has a right to discovery, which I do not admit, such result would follow, it seems to me, only in case discovery in the ancient sense of the term were sought. Discovery means the production of evidence. Where the answer is without oath, the defendant's statements are not evidence in the cause against the complainant. They may be admissions, and as such evidence against the particular answering defendant who makes them.

An answer in chancery originally had a dual capacity. It was

a mere pleading to aid in defining the issues to be tried, and also a means of obtaining evidence not otherwise procurable.

Our statute (*P. L. 1867 p. 166; P. L. 1902 p. 517 § 19*) permitting the complainant to call for an answer without oath gives the complainant the option to obtain from his adversary a pleading which has no force as evidence, except so far as the defendant may see fit to make admissions. This statute, however, expressly provides that the complainant, while calling for an answer without oath, may annex interrogatories to his bill to be answered under oath with the same effect as evidence "as the responsive allegations in answers required to be sworn to." The statute plainly permits the defendant to procure an answer which is a mere pleading, and also to force the defendant to make discovery under oath in regard to any parts of the case concerning which he sees fit to call for such discovery. Notwithstanding this special provision for interrogatories to be answered under oath, the practice is established of permitting the complainant to submit interrogatories in his bill to be answered without oath, and this procedure is considered a mode of obtaining discovery. *Manley* v. *Mickle, 55 N. J. Eq. (10 Dick.) 563* (*1897*). The last-mentioned decision of the court of errors and appeals, however, in my opinion, lays down merely a rule of pleading. The complainant, according to the doctrine of the case, has a right to present to the defendant the opportunity of making admissions, not only in regard to the allegations of the bill, but also in regard to matters of evidence which will be dealt with on the trial, which admissions, if made, may be useful to the complainant. If the defendant answers falsely, so as to deprive the complainant of an advantageous admission, the only penalty which he incurs would seem to be a possible discrediting of his defence or an imposition of costs.

When discovery fails, then jurisdiction also fails, as is conceded by those authorities which hold that jurisdiction for discovery founds jurisdiction for relief. *1 Story Eq. Jur. § 455.* Under no theory, in my opinion, can the jurisdiction of this court to decree an accounting be sustained on the ground that the complainant has a right to invoke the aid of the court for

discovery when the complainant waives an answer under oath and submits no interrogatory to be answered under oath, but abandons altogether the use of the answer as a means of putting the defendant under oath in the cause in advance of the trial, and thereby elects to have the answer stand as a mere pleading.

5. In determining whether the machinery of the courts of law is adequate to accomplish justice in a case like this we must take into consideration that legal machinery as it exists to-day. We must look at the legal machinery which the law courts must set in operation for the purposes of this case, and not the legal machinery which the courts of law would have set in operation if a case like this had been presented to them a hundred years ago. *Bellingham* v. *Palmer, 54 N. J. Eq. (9 Dick.) 136 (1895).*

6. In the class of cases to which the present one belongs it is said that the determination of the question whether a court of equity should intervene and investigate and enforce primary legal rights which have no color of equity is very largely addressed to the discretion of the court—a discretion which must be exercised largely according to the peculiar circumstances of each particular case. *Bellingham* v. *Palmer, supra, 138, 139.*

In the case of *Cranford* v. *Watters, 61 N. J. Eq. (16 Dick.) 284 (1901),* Vice-Chancellor Pitney, after examining a large number of cases, formulates the following rule or principle to guide the court in determining whether or not to take jurisdiction of cases of the class to which the present one belongs: "The test is, are the issues so numerous and so distinct, and the evidence to sustain them so variant, technical and voluminous, that a jury is incompetent to intelligently deal with them and come to a just conclusion."

7. In the case last cited the point is brought out distinctly that this court may properly take jurisdiction of a case presenting a complex account, where the primary rights of the parties are strictly legal, after the inability of the machinery of the courts of law to meet the requirements of the case has been demonstrated by actual experiment, when without such experiment this court would refuse to act. It seems to me that this oftentimes is a safe and controlling principle. It is often dan-

gcrous in these days, when the remedial powers of courts of law are being expanded, not only by legislation, but by natural development, for a court of equity to say in advance that a court of law is incompetent to do justice in any particular case of which it has jurisdiction. It is a good general rule, I think, that courts of equity in many kinds of cases should hold off until the actual test has been applied and the inability of the court of law to do justice has been demonstrated, unless such delay will cause irremediable damage. See *Kronson* v. *Lipschitz, 68 N. J. Eq. 367.*

8. In the case presented by this bill, while the trial apparently may involve a vast number of items, the propositions of fact to be established, after all, are few and simple. The questions seem to be:

(1) What was the total amount of freight transferred of each of the two classes specified in the contract?

(2) What was the total amount of money paid by the defendant to the complainant for this work?

(3) What was the amount and value of the extra work of which the bill alleges both parties kept an account?

(4) If the complainant was entitled to transfer the freight which the bill alleges he was prevented from transferring by the action of the defendant, what was the amount of such freight, and what was the profit which the complainant would have earned if he had been permitted to do this work?

The alleged right of the complainant to do the stevedore work at the freight stations established by the defendant after the date of the contract, and the alleged wrongful deductions which the defendant made on account of goods alleged to have been damaged by the defendant, are matters included within the above specifications.

The complainant insists that he cannot have these matters investigated satisfactorily in an action at law. The defendant denies that such is the case, and claims the right to have the experiment actually tried. This is plainly a case where, if both parties accepted this court as the tribunal for the trial of this cause, the jurisdiction of the court would be beyond dispute.

9. In determining this disputed question between these parties, I think the conduct of the complainant, in permitting what he now claims to be a complex case to be piled up from year to year, is a matter to be carefully considered. The contract provides that the defendant should pay the complainant "on Saturday of each and every week such moneys as may be due ＊ ＊ ＊ for the work performed under this contract during the previous week." The inference from the bill is that these payments, accompanied by written statements of account, were made weekly for five years. The complainant accepted these payments, but alleges that the defendant "did not, during the continuance of said contract, pay ＊ ＊ ＊ on Saturday of each and every week such moneys as he had earned during the previous week." How many of these weekly payments the complainant claims were short of the true amount is not alleged, but assuming that all the allegations of the bill upon this subject, taken together, sufficiently show that large numbers of these payments were not up to the amount due, it still remains that the complainant received them, and satisfied himself with "frequently" protesting. It appears, I think, from the bill, quite distinctly, that the complainant submitted to the numerous violations of the contract of which he now complains, contenting himself in some instances with protesting to an extent very vaguely described, and in some instances without protesting at all. The contract provides that the defendant

"retains the right at any time to perform at the expense of the contractor any of the work herein specified, when, in the opinion of the manager of marine department of the company, the contractor is not proceeding with sufficient rapidity with the work, and also that the contract may be terminated by the company at any time when the performance of any of the work hereinbefore specified is not satisfactory."

These provisions perhaps suggest a reason why the complainant was willing to receive the benefits of the contract during the five years while he held in reserve and allowed to accumulate a mass of more or less minute legal claims which he now seeks to enforce in a single suit in a court of equity. It seems to me that a complainant who has allowed so many claims under this

five-year contract to accumulate and to grow stale is at a de-
cided disadvantage when he now asserts that the aggregate mass
of his claims is too complex to be handled conveniently and
justly by a court of law, in which each particular claim origi-
nally belonged. Each claim when it arose would have consti-
tuted the basis of a very simple action at law, but by allowing
the claims to accumulate, the complainant, it seems, has added
to the whole the element of complexity, and has thereby founded
the jurisdiction of a court of equity to compel the defendant to
account.

It would seem that the complainant, according to his theory
of his case, by his own laches—by permitting a large number of
strictly legal causes of action, created during a period of five
years, to remain unprosecuted—has succeeded in founding an
equity on his own behalf, viz., the right to compel his adversary
to render an account in the court of chancery.

10. I do not admit that this court can take jurisdiction of an
action for unliquidated damages for the breach of a contract, of
which, if simple in character, the courts of law would have ex-
clusive jurisdiction, on the ground that the items of damages
are numerous and complex, or for any other reason impossible
of accurate ascertainment by a court of law. See *Courter* v.
*Crescent Sewing Machine Co.,* *60 N. J. Eq. (15 Dick.) 413*
*(1899).*

11. The defendant argues that the bill shows that there was
a weekly account stated between the parties which bars any suit
for an accounting in this court. *Brown* v. *Van Dyke, 8 N. J. Eq.*
*(4 Halst.) 795, 801 (1853)* ; *1 Story Eq. Jur.* § *526.* I shall not
set forth the allegations of the bill on this subject. I think the
fair meaning of the bill is that the complainant "frequently,"
*i. e.,* from time to time, protested against the weekly statements
rendered to him by the defendant as they came in. How many
statements he objected to, and how many he accepted and acqui-
esced in, we are not informed. Two hundred and sixty state-
ments must have been rendered in the five years. Perhaps only
a dozen or two dozen were objected to. A large part of the com-
plainant's complex and intricate claim may, for all that appears

in the bill, be reduced to a state of extreme simplicity by the application of the doctrine of "account stated." · It is evident that all evidence, as to a very substantial part of the complainant's case, embracing very many details, may be excluded by a ruling of the trial court as to the construction of the contract. Taking every well-pleaded allegation of the bill to be true, I think the case exhibited is one which a court of law, with its modern methods of procedure, including orders for the production of books, examination of parties before trial, and the statement and settlement of accounts by references, may dispose of in as complete accord with all the principles of justice as would be possible in a court of equity. It seems to me, in this peculiar class of cases, where the complainant is endeavoring to have an action at law tried in a court of equity because of its alleged intricacy and complexity in respect of matters of fact, the bill must do more than show a case which might, on trial in a court of law, prove intricate and complex, so as to make the legal procedure applied to its determination inadequate. Where the defendant denies the right of the complainant to try his legal action or actions in the court of chancery the complainant must show, at least presumptively, that the alleged intricacies and complexities will appear so as to embarrass, if not defeat, the useful operation of the machinery of the court of law in which the legal action might be brought. In such a case, in brief, I think the complainant must show that his remedy at law in fact is inadequate, and not merely that such remedy may in the end turn out to be inadequate. Of course, we are now concerned only about the correct rule to be applied to cases like this, where the sole foundation of the jurisdiction of the court of chancery is the inability of the courts of law to provide an adequate remedy. An entirely different rule may be applicable to cases where there is a fiduciary relation, or an element of fraud or mistake, so as to give a court of equity jurisdiction apart altogether from the mere inadequacy of the remedy at law.

12. If this bill should be adjudged to present a case of equitable cognizance, I think that large numbers of actions of law on contracts of various kinds, which our law courts are constantly

disposing of with complete recognition and enforcement of all the rights of the parties, could be transferred, at the election of either party, to the court of chancery. The prospect of such a transfer of jurisdiction is somewhat appalling.

13. The bill contains one charge of fraud, which calls for some special consideration. This charge is set forth as follows:

"That said defendant company did not during the continuance of said contract pay to your orator on Saturday of each and every week such moneys as he had earned during the previous week, but your orator charges and insists that the said defendant company, with the intent to and for the purpose of cheating and defrauding your orator, rendered to your orator incorrect and fraudulent statements of the amount of freight transferred and hauled by him, and paid your orator in accordance with said incorrect and fraudulent statements, and neglected and refused to pay him for freight actually transferred and handled by him under said contract; that your orator frequently protested to said defendant company in regard to said inaccurate and fraudulent statements of freight transferred and handled by him, but was informed by said defendant company that the said payments to him were made in accordance with the weight of said freight as the same appeared upon the waybills or receipts for said freight; but your orator charges and insists that said waybills or freight receipts did not correctly show the amount (or weight) of the said freight therein mentioned; that in many instances the weight or amount of freight as set forth in said waybills or freight receipts is not more than from sixty to eighty per cent. of the actual weight of said freight."

There are several reasons, I think, why the foregoing allegations, which in a general way charge a fraudulent intent against the defendant, cannot in this case be deemed to give the court jurisdiction of the case presented by the bill. There is no charge that the defendant actually committed any fraud, or even in any way deceived the complainant. On the contrary, it appears from the bill that the complainant was not deceived, but "protested to the said defendant company in regard to the said incorrect and fraudulent statements," and that upon such protest the defendant sought to justify itself by alleging that the payments were made in accordance with the weight of the freight as it appeared upon the waybills. The complainant thereupon "charges and insists" that the waybills were incorrect, and that in many instances the true weight was far greater than that set

forth in the waybills. The bill, however, does not allege that the complainant notified the defendant of what he now charges and insists, as above set forth. Nor does the bill allege that the defendant was guilty of any fraud in respect of the waybills, or was in any way notified that they were incorrect, or that statements taken from them would be liable to mislead or deceive the complainant.

Notwithstanding the distinct charge that the defendant rendered incorrect statements, with intent to cheat and defraud the complainant, there are strong grounds for construing all the allegations above set forth, embodying this so-called charge of fraud, as in fact setting forth a transaction in which no fraud appears. It is not a sufficient charge of fraud in a bill to allege that the defendant has done something with intent to cheat and defraud when the thing charged appears on its face entirely innocent and free from fraud. It is necessary that facts should be alleged from which fraud may be inferred. If the defendants took the weights which they set forth in their weekly statements from the waybills, knowing that the waybills were false, or knowing that the complainant might thereby be deceived, the bill should have so alleged. On the contrary, as I have pointed out, it appears distinctly from the bill that the complainant was not deceived.

But if on demurrer the bill must be deemed to contain a charge of fraud, such charge relates only to conduct of the defendant affecting the evidence of a part of the complainant's claim. The bill is not filed to recover damages on account of this alleged fraud, but to recover the amount of money earned under the contract. At most, the alleged fraud or attempted fraud was a deception practiced or attempted to be practiced by the defendant with intent to conceal a portion of the amount which the complainant had earned. I do not think that such a mere effort—an unsuccessful effort—to deceive the complainant as to the amount of his earnings can give a court of equity jurisdiction of an action to recover the amount actually earned and unpaid. If such were the case, then it seems to me that the jurisdiction of a court of equity on the ground of fraud might

be extended to a very large number of strictly legal litigations in which one of the parties has practiced some deception in the way of concealment or suppression of evidence. Courts of law are now equipped with extensive powers for the discovery of evidence in such cases, and in many such cases a bill for discovery pure and simple will lie in this court in aid of the appropriate action at law.

It must be kept in mind that the bill does not allege that the defendant was under any obligation to keep accounts of the complainant's work, or had notice that he was not keeping accounts, or had notice that he relied on the accounts kept by the defendant. Giving the greatest possible force to the allegations that the defendant rendered false statements, I do not think that the unsuccessful attempt of the defendant to deceive the complainant as to the extent of part of his earnings can justify this court in taking jurisdiction of an action at law to recover those and other earnings, which jurisdiction it would not assume if no such unsuccessful deception had been attempted.

14. My present conclusion is merely this: That the complainant's case, as set forth in his bill, is not one of which this court should take jurisdiction until the same has been subjected to the course of procedure which a court of law in New Jersey to-day can pursue for its determination. Whether, as in the case of *Cranford* v. *Watters,* after a court of law has attempted to dispose of the case, grounds will appear for transferring it to a court of equity cannot now be determined.