Rosa Lanza Capraro, complainant-respondent,

*v.*

Isabella Propati, also known as Isabella Capraro, and John Propati, also known as John Capraro, and Mary Propati, also known as Mary Capraro, defendants-appellants.

[Submitted February term, 1940.   Decided May 21st, 1940.]

420

*Messrs. Collins & Corbin (Mr. Edward A. Markley* and *Mr. Raymond J. Lamb, of counsel), for the appellants.*

*Mr. Frank J. Bello (Mr. Samuel S. Stern and Mr. Morris L. Stern, of counsel), for the respondent.*

The opinion of the court was delivered by

HEHER, J.

The enforcement of an express private trust was within the general exclusive jurisdiction of equity as derived from the English Chancery. In time, the jurisdiction was extended to the estates of deceased persons. This equitable authority to compel the due administration of the personal estate of deceased persons, in favor of creditors, legatees, and other parties in interest, is generally justified as the execution of an express active trust. Yet it seems to have been a gradual

development of a function originally exclusive in the ecclesiastical courts, arising from the lack of capacity of that tribunal or any other to render effectual justice to all interested parties; and that jurisdiction still subsists, although no longer exclusive. While the courts of common law for a time entertained actions for the enforcement of the payment of legacies, on the hypothesis of an express or implied promise on the part of the executor to pay, jurisdiction for the recovery of general legacies was eventually renounced; and there was no action at common law for the recovery of a legacy, unless it was a specific legacy of goods, and the executor had assented to it so that the property therein vested in the legatee, although it has been suggested that an express promise by the legal representative to pay a general legacy or distributive share also falls into this category. It was found that the procedure at law was inadequate for the determination of the rights of the legatees, distributees, and creditors, and the rateable adjustment of their claims, the proportionate distribution of the assets among those having demands of equal degree as to priority, and the final settlement of the estate. *Frey* v. *Demarest, 16 N. J. Eq. 236; Adams* v. *Camden Safe Deposit and Trust Co., 121 N. J. Law 389, 397;. Green's Adm'x* v. *Creighton, 64 U. S. 90; 16 L. Ed. 419; 1 Spenc. Eq. Jur.* §§ *194, 578 et seq.; Pom. Eq. Jur. (4th Ed.)* §§ *156, 349, 1127, 1152.*

But the corollary is that, where the amount of the distributive share has been definitely established, there is no need for equitable interposition to enforce its payment; and so the legislature long since provided for the recovery of a distributive share from the executor or administrator by an action at law where there has been a decree of distribution. *R. S. 1937, 3:26-6, 3:26-24.* And the legatee is also given a right of action at law for the recovery of his legacy under certain conditions. *R. S. 1937, 3:26-25 et seq.*

Though the function of the general administrator, in respect of the amount recovered and paid to him under the Death act (*R. S. 1937, 2:47-1 et seq.*), partakes of the character of a trusteeship, the fund is for the exclusive benefit of the widow and next of kin, distributed in the proportions pro-

vided by the act relating to the personal property of intestates, and is therefore not an asset of the estate; and accordingly it was held in this very matter that while the Orphans' Court "has jurisdiction of the *administration* of the fund, as it has over executors' and administrators' accounts of decedents' estates under the statute," it did not possess the power "to order distribution of the fund." *In re Capraro, 116 N. J. Eq. 259; affirmed, 119 N. J. Eq. 82.*

We perceive no reason in principle why complainant, if entitled to the whole of the fund as the lawful widow of the deceased, is not at liberty to proceed at law for the recovery of the sum thus made definite and certain in amount. Granting that section 3:26-24 of the Revision, *supra,* is not apposite, yet the decree of the Orphans' Court settling the general administrator's account fixed the amount available for distribution among the kin designated by the statute; and it is to be borne in mind that the assumption of equitable jurisdiction over the estates of deceased persons was grounded primarily in the inability of the law courts to do justice in that field to all the parties. The common law action of *indebitatis assumpsit* is appropriate for the recovery of the money thus found to be due to the distributees.

In *Ordinary* v. *Executors of Smith, 15 N. J. Law 92, 97,* Chief-Justice Hornblower said: "Judge Griffith in his *Law Register, 4 vol. 1192 n. 2,* and *Id. 1254 in note,* admits, that in point of fact, the Orphans Court seldom make any order or decree for distribution, determining to whom, and in what proportions, the surplus is to be paid; and he remarks, the practice has been for the administrator to take it upon himself to ascertain who are the persons entitled, and their proportions, and then to pay them off, or settle with them as well as he could; and he adds, that sometimes the next of kin sue the administration bond, or bring an action of *assumpsit* against the administrator, founded on the statute of distributions, setting forth the amount of the surplus, the title of the plaintiff, and averring the sum due to him, as one of the persons entitled to a distributive share." While it was there laid down "that the next of kin could not maintain *assumpsit,* or any other action at law against the executor

or administrator, if such remedy had not been given by statute," the holding was but a recognition of the ancient exclusive jurisdiction of equity over the estates of deceased persons due to the inability of other tribunals to do full justice between the parties. That principle is not pertinent here. The statute creates the fund, and provides for its distribution. As stated, the fund is not an asset of the estate, and is not subject to the payment of the deceased's debts. Rather, the doctrine of *Mayor, &c., of Jersey City* v. *Gardner, 33 N. J. Eq. 622,* is applicable. There it was held, in relation to the recovery of established compensation for lands condemned for a public street, that, where "The duty to pay, and the right to be paid, are * * * complete," and there is "no prescribed mode under the statute in which payment is to be enforced, the right of suit is complete as upon implied *assumpsit,* upon the established principle that where there exists a duty to pay the law raises a promise to do so. * * * There is thus created a statutory obligation on the town to pay the sum awarded. To deny this duty is to deny the authority of the statute. Duty to pay money, however arising, creates civil obligations which courts of law are constantly enforcing by their judgments." *Vide, Passaic National Bank and Trust Co.* v. *Eelman, 116 N. J. Law 279.*

The common law action of *assumpsit* has its genesis in relief anciently afforded by Chancery in respect of executory promises and implied obligations, due to the lack of a remedy at law. It is founded in equitable principles. The action constitutes the adoption and application of equitable doctrine by the courts of common law "so as to supersede, to a considerable extent, the necessity for the continued interference of the Court of Chancery; indeed, as before observed, there is scarcely an equitable principle which prevails in the Court of Chancery that has not long since been adopted and acted upon in that description of action." *1 Spenc. Eq. Jur. 694, 700.* "This action has been extended—'conscience encroaching on the common law'—to almost every case where an obligation arises from natural reason, and the just construction of law, that is, *quasi ex contractu." Assumpsit* for money had and received is grounded in principles of justice. It was

"extended on the principle of its being considered *like a bill in equity;* the party must show that he has *equity and conscience* on his side, and that he could recover in a court of equity." *Ibid. 245, 246.* See, also, *Sergeant and Harris* v. *Stryker, 16 N. J. Law 464; Sherwin* v. *Sternberg, 77 N. J. Law 117, affirmed, 78 N. J. Law 557; Township of Franklin* v. *Crane, 80 N. J. Eq. 509; Keener on Quasi-Contracts 14 et seq.*

But this assumption by the law courts, through the equitable *assumpsit,* of power essentially equitable did not curtail the ancient jurisdiction of Chancery. *Shotwell's Adm'r* v. *Smith, 20 N. J. Eq. 79; Sweeny* v. *Williams, 36 N. J. Eq. 627; Wilson, Attorney-General,* v. *State Water Supply Commission, 84 N. J. Eq. 150; 2 Spenc. Eq. Jur. 16.*

There is a class of trusts, "technical and continuous in their nature," which is within the exclusive jurisdiction of equity, "and cannot be enforced or efficiently administered by any other tribunal." And there is another class, embrasive of the instant case, within the concurrent jurisdictions of law and equity. The distinguishing characteristic would seem in the main to be the adequacy and efficiency of the legal remedy. *Agens* v. *Agens, 50 N. J. Eq. 566; Gutch* v. *Fosdick, 48 N. J. Eq. 353.* In *Kane* v. *Bloodgood, 7 Johns. Ch. 90,* Chancellor Kent declared: "I cannot assent to the proposition, that all cases of direct and express trust, and arising between trustee and *cestui que trust,* are to be withdrawn from the operation of the statute of limitations, notwithstanding a clear and certain remedy exists at law. The word 'trust,' is often used in a very broad and comprehensive sense. Every deposit is a direct trust. Every person who receives money to be paid to another, or to be applied to a particular purpose to which he does not apply it, is a trustee, and may be sued either at law for money had and received, or in equity, as a trustee, for a breach of trust. * * * The trusts intended by the courts of equity, not to be reached or affected by the statute of limitations, are those technical and continuing trusts which are *not at all cognizable at law,* but fall within the proper, peculiar, and exclusive jurisdiction of this court."

In *Township of Franklin* v. *Crane, supra,* this court ruled that the relation of a municipal tax collector to the municipality, "in respect to tax moneys collected by him in the performance of his official duties, is not of such a fiduciary nature as to be the subject of equity jurisdiction, but is that rather of a debtor toward his creditor." It was affirmed: "The trusts which equity administers and enforces are mainly private trusts arising from contracts, express or implied, in law, exhibited generally in writings, or verbal, only, except so far as forbidden by the statute of frauds. *1 Pom. Eq. Jur.* §§ *152, 153; 2 Ibid. 987.* A public office does not rest upon contract, but on duty, and the appropriate forum for the enforcement of official duties is primarily a court of law—by *mandamus,* if the duty be clear, and the amount involved is not fairly disputable * * *, or by action at law upon the common counts if the amount claimed is not certain or fixed. All the tax money the defendant has paid out without authority of law he still holds, in legal contemplation, to the use of the township, and for that he is liable to respond in an action at law for money had and received. * * * The defendant held toward the township no trust relation of any kind with respect to tax moneys collected by him. As to these he was neither a public nor private trustee. * * * The records kept by the township show precisely how much money came, originally, into its officer's hands, and while the sums of money he may have illegally disbursed may be unknown, yet he does not cease to owe them to the municipality. He was its debtor to that extent, and the remedies against him for their recovery are those which the courts of law fully afford. The effect of holding that the relation of the defendant to the township was that of a trustee and cognizable, in equity, is to deprive him of the right of a trial by jury, as well as to take away from him the protection of the statute of limitations." See, also, *Marsh's Ex'rs* v. *Oliver's Ex'rs, 14 N. J. Eq. 259, 262; McClane's Admx.* v. *Shepherd's Ex'x, 21 N. J. Eq. 76; Partridge* v. *Wells, 30 N. J. Eq. 176; affirmed, 31 N. J. Eq. 362; Buckingham* v. *Ludlum, 37 N. J. Eq. 137; Kirkpatrick* v. *McElroy, 41 N. J. Eq. 539.* However, the administrator here would seem

to be in a different category. In *Ellicott* v. *Chamberlin, 38 N. J. Eq. 604, 609,* this court cited with approval a Missouri case in which it was held that "although an administrator was not a public officer, yet he held a private trust as sacred." But that distinction is not determinative.

Here, the trust is passive or naked in character; and, in such circumstances, there is no need for equitable interposition—the legal remedy is entirely efficient. It is the rule, grounded in reason and the current of authority, that, where there has been a final settlement of the accounts of the trustee of an active trust, and the sum due the *cestuis que trust* has been definitely determined, and the trustee is under a peremptory duty to render payment of the amount so found to be due, an action at law for money had and received is maintainable by the *cestuis. Husted* v. *Thomson, 158 N. Y. 328; 53 N. E. Rep. 20; Upham* v. *Draper, 157 Mass. 292; 32 N. E. Rep. 2; Perry on Trusts and Trustees* (7th ed.) § *843.* See, also, *Rutherford* v. *Alyea, 54 N. J. Eq. 411; Adams* v. *Camden Safe Deposit and Trust Co., supra.* And in *Township of Franklin* v. *Crane, supra,* this court adopted the view expounded by Professor Pomeroy (1 *Pom. Eq. Jur. (4th ed.)* § *178*) that, "Whenever an action at law will furnish an *adequate* remedy, equity does not assume jurisdiction because an *accounting* is demanded, or needed, nor because the case involves or arises from fraud, nor because a contribution is sought from persons jointly indebted, nor even to recover money held in trust, where an action for money had and received will lie."

Thus it is that, even though equity has jurisdiction to decree payment by the trustee of the fund in his possession, the courts of law have concurrent jurisdiction over the subject-matter. In such circumstances, the exercise of equitable jurisdiction rests in judicial discretion; and, for the reasons presently to be stated, relief should not have been awarded here.

The fundamental question at issue was the legal status of the parties, *i. e.,* whether the complainant or the defendant Isabella was the lawful wife of the deceased at the time of his death, and, at all events, whether the deceased's children

were legitimate within the intendment of the law. These purely legal questions were at issue in the action of ejectment (brought by the complainant herein) pending at the time of the filing of the bill; and, since a law court of competent jurisdiction had taken cognizance of the issue, the bill should have been dismissed or held pending its determination at law.

Prior to the filing of the bill, there had been a trial of the issue at law. A verdict in favor of the plaintiff was set aside on the ground that consideration had not been given to the statute (*P. L. 1924 ch. 144; R. S. 1937, 9:15-2*) under which the children claimed legitimacy on the assumption of the invalidity of their parents' marriage. Rather than proceed to a new trial of the issue, equitable jurisdiction was invoked without any special ground therefor other than the general supervisory control exercised by the Chancellor over trustees.

There was no occasion for equitable cognizance of the subject-matter—certainly not until after the determination at law of the strictly legal question thus raised. As to the lands, the action of ejectment indubitably afforded a wholly efficacious remedy at law, and equity therefore was plainly without jurisdiction to determine the issue of title. *Waddell* v. *Beach, 9 N. J. Eq. 793; Dickerson* v. *Stoll & Edsall, 8 N. J. Eq. 294; Mayor, &c., of Jersey City* v. *Gardner, supra.* Compare *Knikel* v. *Spitz, 74 N. J. Eq. 581; Daab* v. *New York Central, &c., Railroad Co., 70 N. J. Eq. 489; Bellingham* v. *Palmer, 54 N. J. Eq. 136; First National Bank of Morristown* v. *Bininger, 26 N. J. Eq. 345.* With certain exceptions not here pertinent, "there is no jurisdiction in a court of equity over the invasion of mere private legal rights in land. The appropriate remedy is by suit at law." *Hart* v. *Leonard, 42 N. J. Eq. 416.* And the determination of the issue thus framed at law *ex necessitate* will be dispositive of the essential question of title to the fund—also a purely legal interest—although the remedy may be barred by the statute of limitations. There is no peculiar reason for equitable interference.

In *Township of Franklin* v. *Crane, supra,* this court laid down the following definitive jurisdictional formula: "Where the primary right of the plaintiff is purely legal, arising either

from the non-performance of a contract, or from a tort, and the money sought to be recovered as a debt, or as damages, and the right of action is not dependent upon or connected with any equitable feature or incident, such as fraud, mistake, accident, trust, accounting or contribution, and the like, full and certain remedies are afforded by actions at law, and equity has no jurisdiction; these are cases especially within the *sole* cognizance of the law." The cases of *Daab* v. *New York Central, &c., Railroad Co., supra,* was cited with approval: "The decision of the Court of Chancery in that case holds that where the primary rights of the complainant for the enforcement of which a suit in equity is brought, are *strictly legal,* the mere fact that the bill prays for a discovery presents no ground for extending the jurisdiction of equity to compel the defendant to account. This principle is fully sustained by the numerous authorities referred to on page 491 of the cited opinion, and is in accord with the views we entertain and which we have above intended to express." And in *Commonwealth Roofing Co.* v. *Riccio, 81 N. J. Eq. 315; affirmed, Id. 486,* Vice-Chancellor Garrison declared: "This being so, the utmost that counsel for the complainant can successfully argue that he has shown is a case where courts of equity and of law have concurrent jurisdiction; and in all such cases the former have held that they will not exercise their jurisdiction if the recovery at law is full, plain and adequate, unless there are some features of the case which make it more appropriate for a court of equity than a law court to handle. This is particularly and peculiarly so in all those cases where the only thing sought is a pecuniary recovery."

Moreover, the granting of equitable relief is ordinarily a matter of grace, and, while the Chancellor may not act arbitrarily and in defiance of established principles, equitable cognizance of a cause which is the subject of concurrent jurisdiction rests in sound judicial discretion, and is usually declined where there is a wholly effectual remedy at law. and there are no special circumstances calling for equitable interposition. *Pridmore* v. *Steneck, 122 N. J. Eq. 35; Bellingham* v. *Palmer, supra; Krueger* v. *Armitage, 58 N. J. Eq.*

*357; Cranford Township* v. *Watters, 61 N. J. Eq. 284; Polhemus* v. *Holland Trust Co., 61 N. J. Eq. 654; Eggers* v. *Anderson, 63 N. J. Eq. 264; Daab* v. *New York Central, &c., Railroad Co., supra; Knikel* v. *Spitz, supra; 2 Spenc. Eq. Jur. 16; Pom. Eq. Jur. (4th ed.) § 176.* Of course, there is a basic deficiency where the lack of a sufficient remedy is deemed indispensable to such concurrent jurisdiction and not merely a factor regulative of its exercise.

And it is also the settled general rule that, where the primary right, interest, or estate is legal, and the jurisdictions of law and equity are concurrent, "the one which first takes actual cognizance of any particular controversy ordinarily becomes thereby exclusive." Where in such circumstances an action at law pends, "a court of equity will not, unless some definite and sufficient ground of equitable interference exists, entertain a suit over the same subject-matter even for the purpose of granting reliefs peculiar to itself, such as cancellation, injunction, and much less to grant the same kind of relief which can be obtained by the judgment at law. The grounds which will ordinarily prevent the application of this doctrine, and will permit the exercise of the equitable jurisdiction in such cases, are the existence of some distinctively equitable feature of the controversy which cannot be determined by a court of law, or some fraudulent or otherwise irregular incidents of the legal proceedings sufficient to warrant their being enjoined, or the necessity of a discovery, either of which grounds would render the legal remedy inadequate." *Pom. Eq. Jur. (4th ed.) § 179.*

This principle is fundamental in our jurisprudence. In this common field, courts of equity "will decline to entertain jurisdiction after the jurisdiction of the courts of law has attached, unless the relief that the applying party is entitled to ask cannot be fully obtained in the court of law." *Sweeny* v. *Williams, supra.*

And, even where equitable relief is essential respecting a subsidiary phase of the controversy, a change of forum as regards the subject-matter of the litigation will not ordinarily ensue. The party seeking such secondary equitable relief is not thereby privileged to withdraw cognizance of the cause

from the legal forum for the determination of equity. "Where a suit has been commenced at law, the defendant may be entitled to a discovery from his adversary, and may resort to this court [Chancery] to obtain it. But if he seeks to change the forum of litigation, and prays for relief as well as discovery, the subject-matter must be one which appropriately belongs to equity jurisdiction. His bill must show a case of manifest propriety in this court's retaining the cause. Fonblanque and Cooper lay it down, that 'the court, having acquired cognizance of the suit for the purpose of discovery, will retain it for the purpose of relief in most cases of fraud, account, accident and mistake.' So, if it is plain that adequate relief can be given, and at the same time a multiplicity of suits be prevented, the court, having obtained jurisdiction, will go on and give the proper relief." *Little* v. *Cooper, 10 N. J. Eq. 273.* See, also, *Story Eq. Jur.* (*14th ed.*) § *105.* The right to incidental equitable relief does not draw to equity cognizance over controversies "alien to its genius and its methods of procedure." *Lodor* v. *McGovern, 48 N. J. Eq. 275.* See, also, *Brown* v. *Edsall, 9 N. J. Eq. 256; Ely* v. *Crane, 37 N. J. Eq. 157; Casperson* v. *Casperson's Executors, 65 N. J. Law 402.* The rule that equitable jurisdiction of a cause for a particular purpose confers concurrent jurisdiction over all matters in issue is permissive rather than peremptory in its operation; the assumption of jurisdiction in such circumstances rests largely in the sound discretion of the Chancellor, and is ordinarily exercised only when necessary to subserve the ends of justice. *Luckenbach Terminals, Inc.,* v. *North Bergen Township, 127 N. J. Eq. 93; Shaw* v. *G. B. Beaumont Co., 88 N. J. Eq. 333; Lodor* v. *McGovern, supra; Little* v. *Cooper, supra; Brown* v. *Edsall, supra.*

Neither the hazards of a jury trial, due to "mere complication of facts" or "difficulty of proof," nor purely administrative delay in obtaining relief at law, is a ground for equitable intervention. *Curriden* v. *Middleton, 232 U. S. 633; 34 S. Ct. 458; 58 L. Ed. 765.*

Here, there was no equitable element justifying the assumption of jurisdiction by Chancery save its general superin-

tendency of trustees; and this manifestly constituted no ground for equitable interposition. The subject of controversy is essentially legal; and the action of ejectment affords appropriate legal machinery for its determination. The object of the bill was not equitable relief merely ancillary to the legal remedy. The primary purpose was to secure a determination in equity of a strictly legal question involving the title to real and personal property. The invocation of the supervisory power of the Chancellor over trustees was but a pretext for withdrawing the issue from the cognizance of the law court. It was not within the province of complainant, no special equity appearing, thus to invoke equitable jurisdiction to the exclusion of that already assumed by the law court.

And there was error in holding that the deceased's children lack the status of legitimacy within the view of the law.

There was a ceremonial marriage on November 21st, 1907, followed by open cohabitation until the deceased's death twenty-seven years later. While not to be understood as concurring in the conclusion of the learned vice-chancellor that the evidence establishes that this marriage was bigamous, yet on that hypothesis the children are legitimate within the contemplation of the law.

Chapter 144 of the laws of 1924 (*P. L. p. 318*) unqualifiedly invested with legitimacy—as to both parents—a child "born of a ceremonial marriage * * *, even though the marriage be thereafter annulled or declared void." This statute was entitled "An act to provide for the legitimation of children born of a ceremonial marriage, which is subsequently declared void;" and it was carried into the Revision of 1937, unaltered in substance, as section 9:15-2, under Title 9, headed "Children—Juvenile and Domestic Relations Courts," subtitle 4, captioned "Illegitimate Children" and chapter 15, labeled "Legitimation." Under the pre-existing law, a decree of nullity of marriage did not render the offspring illegitimate save where the marriage was bigamous. Section 1 of the Divorce act of 1907, *Comp. Stat. 1910 p. 2021.* Thus it is that, under the Vice-Chancellor's ruling, the act of 1924 would be wholly devoid of purpose and meaning. While the cited provision of the Divorce act was incorporated,

without substantial change, in an amendment of this section adopted in 1928 (*P. L. p. 139*), the ostensible legislative purpose was merely to raise the age of marriage consent in the case of the female from sixteen to eighteen years, for in 1931 this section was again amended to provide that a decree of nullity should not render illegitimate the issue of the marriage, "except where the marriage, *not being a ceremonial marriage*, is dissolved because" bigamous. *P. L. 1931, p. 783; P. L. 1933, p. 1154.* This provision was embodied in the Revision as section 2:50-33.

Evidently, it was the legislative purpose to clothe with the attribute of legitimacy the children of a ceremonial bigamous marriage. The act of 1931 distinguished between a ceremonial and non-ceremonial bigamous marriage, and explicitly granted legitimacy to the issue of the former. The design was to relieve the innocent children, where there was a ceremonial marriage, of the drastic pre-existing legal consequences of the parental transgression. That policy is outstanding; and it manifestly does not transcend the legislative province. The treatment of these provisions in the Revision is demonstrative of a legislative sense of the subsistence of the act of 1924 from the time of its adoption until its incorporation in the Revision. Compare *Crater* v. *County of Somerset, 123 N. J. Law 407.* Under that provision, the children are of the same status in law as those born of a "valid marriage."

The contention of respondent that the act of 1924 "does not protect the offspring of a marriage null in law, which needs no decree of court to declare such result," makes a distinction that is not to be found in the statutes, viewed as a homogeneous whole—one that is clearly illusory.

Decree reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFS-KEIL, RAFFERTY, HAGUE, JJ. 13.