The defendants move to strike the bill for various reasons, all of which, summarized, are: That the suit is a claim for debt, or specified money damages arising out of a breach of contract, for which there is an adequate remedy at law; that the complainant has been guilty of laches; that the bill shows that the complainant accepted a new contract of tenancy and repudiated the contract upon which this suit is based.
The bill shows that the complainant and her husband (now deceased) on or about October 1st, 1928, executed a twenty-year lease for the premises, 80 Cottage Street, Jersey City, New Jersey, to the Bergen Savings Bank, a corporation of this state, which entered into possession of the premises. On March 23d 1929, the Savings Bank decided to dissolve which decision was approved by the Commissioner of Banking and Insurance of this state on July 9th, 1929.
On April 1st, 1929, the Savings Bank assigned the lease to Harry F. O'Nealia, who, in turn, assigned it to the 2976 Boulevard Holding Company on November 1st, 1929. On the day last aforesaid, the 2976 Boulevard Holding Company sublet a part of the demised premises to the Bergen Trust Company for a period of two years. The Trust Company occupied the premises until September 17th, 1940.
The Trust Company was incorporated under the laws of this state on March 1st, 1929, and its certificate to do business was approved by the Commissioner of Banking and Insurance on July 9th, 1929. On the day last aforesaid, the Savings Bank, through its board of managers, transferred its assets and its good will to the Trust Company.
On November 10th, 1939, the complainant instituted an action against the defendant Bergen Trust Company, in the New Jersey Supreme Court, Hudson Circuit, for arrears of *Page 382 
rent for the premises, which she alleged the Trust Company assumed to pay.
The complainant's bill alleges that the Trust Company had assumed the liability of the Savings Bank under the lease wherefore she brought her action at law. She charges that the aforesaid transfer to the Trust Company left the Savings Bank without assets to meet its obligations, including those under the lease; and she prays: (1) that the defendants make complete discovery of their transactions complained of in the bill, and particularly the assets of the Bergen Savings Bank which were transferred to the Bergen Trust Company, and proceeds of any disposition thereof by the Bergen Trust Company; (2) that the court declare under the Declaratory Judgment Act the rights of complainant as against each of the defendants and the respective rights among the defendants; (3) that it be decreed that the dissolution of the Savings Bank was unlawful and fraudulent as against complainant and any other unpaid creditors of the Savings Bank as its cestuis que trustent; (4) that the individual defendants account for the amount of assets coming into their hands as trustees in dissolution of the Savings Bank, and pay the same over to the Savings Bank to the end that the funds shall be made available for the performance of the obligations of the Savings Bank under complainant's lease; (5) that the transfer of assets be decreed to have been fraudulent, null and void as against the complainant and any other unpaid creditors of the Savings Bank, and in violation of section 64 of the Corporation Act and in violation of the Uniform Fraudulent Conveyance Act and the common law, and that the Trust Company be decreed to return to the Savings Bank the assets disposed of by it, or so much thereof as shall be necessary to provide for the fulfillment of the obligations of the bank under the lease, and to pay any other creditors of the bank; (6) that it be decreed that the assets received by the Trust Company from the bank are impressed with a trust in favor of complainant and any other unpaid creditors of the bank to the extent necessary to fulfill the bank's obligations under the lease, and to other unpaid creditors; (7) that the Trust Company be decreed to pay to the Savings Bank the value *Page 383 
of any assets received by it from the bank, and since disposed of, whose proceeds cannot be traced to any moneys or property now in the Trust Company's hands, or so much thereof as may be necessary to fulfill the obligations of the bank under the lease, and to pay any other unpaid creditors of the Savings Bank; (8) that the Bergen Trust Company be decreed to have assumed the obligations of the Savings Bank under the lease; (9) that the Trust Company be decreed to be the equitable assignee of the lease and liable thereunder as such assignee; (10) that the corporate defendants and the individual defendants, jointly and severally, to the amount of the assets of the Savings Bank as of July 9th, 1929, be decreed to pay to complainant the rents accrued and unpaid under the lease, and to pay the taxes which have not been paid; (11) that the corporate defendants and the individual defendants, jointly and severally, to the amount of the assets of the Savings Bank as of July 9th, 1929, be decreed specifically to pay and perform the obligations of the Savings Bank under the lease; (12) that the corporate defendants be enjoined and restrained from abandoning the demised premises, and commanded to perform the covenants in the lease on the part of the tenant to be performed; and (13) that complainant have such other or further relief as may be equitable and just.
The complainant's rights all appear to have developed from the lease. From the time of its execution up to about September 1st, 1940, she, without question, accepted the rentals from the Trust Company and all her actions indicated that she regarded the Trust Company as her tenant. Her complaint, in part, says that there are arrearages of taxes for several years, amounting to the sum of $5,747.55; and that there are defaults in rent which at the time of the filing of the bill totaled $19,035.
It is clear that the subject-matter of this suit is plainly a breach of contract; and the money damages claimed are fixed and certain.
There is nothing in the complaint to indicate that at the time of the making and execution of the lease, any misrepresentations or fraud had been practiced; nor is there any *Page 384 
allegation of special equities in connection with the primary obligation, which is the non-payment of rent and taxes in accordance with the terms of the lease. Certainly, that situation does not involve any equitable considerations. Stein v.Elizabeth Trust Co., 126 N.J. Eq. 399; 9 Atl. Rep. 2d 672;Passaic National Bank and Trust, c., Co. v. Eelman,116 N.J. Law 279; 183 Atl. Rep. 677.
The fact that the complainant undertakes to surround what is conceived to be purely a law action with demands for the application of equitable principles of discovery, accounting, and the impression of a trust, c., do not ipso facto lend a color of equitable right. The complainant originally conceived that her claim was cognizable at law and consequently brought her action there. Notwithstanding the fact that the lease may have been assigned without the assent or approval of the lessor, the terms of the contract still stand, and the remedy for a violation of its terms remains at law.
The Court of Errors and Appeals has laid down the following jurisdictional formula in the case of Capraro v. Propati,127 N.J. Eq. 419; 13 Atl. Rep. 2d 318, wherein it said:
"`Whenever an action at law will furnish an adequate remedy, equity does not assume jurisdiction because an accounting is demanded, or needed, nor because the case involves or arises from fraud, nor because a contribution is sought from persons jointly indebted, nor even to recover money held in trust, where an action for money had and received will lie.'
"Thus it is that, even though equity has jurisdiction to decree payment by the trustee of the fund in his possession, the courts of law have concurrent jurisdiction over the subject-matter. In such circumstances, the exercise of equitable jurisdiction rests in judicial discretion; and, for the reasons presently to be stated, relief should not have been awarded here."
To the same effect is the decision in Daab v. New YorkCentral, c., Railroad Co., 70 N.J. Eq. 489; 62 Atl. Rep. 449.
The complainant contends that at the dissolution of the Savings Bank, its board of managers became trustees of the *Page 385 
assets of the bank for the benefit of its depositors, creditors and obligees, including the complainant and her husband; that the transfer of the assets to the Trust Company made the Savings Bank insolvent. The defendants reply that if the Savings Bank became insolvent because of the transfer of its assets, then the complainant was not a creditor within the meaning of the law; that her claim under the lease thereby became contingent; and that in insolvency proceedings equity would be powerless to grant relief for future rent. They argue that the Savings Bank up to the time of the transfer of its assets to the Trust Company had discharged all of its obligations under the lease; and that under these circumstances, since the complainant was not a creditor under the law, the board of managers as trustees of the assets of the Savings Bank were not guilty of any breach of duty to the complainant and are therefore not liable jointly or severally.
In the case of Stockton, Attorney-General, v. The Mechanics,c., Bank, 32 N.J. Eq. 163, the receiver therein filed a petition for directions as follows: "Whether the rent on a lease of a store, c., the term under which had not expired when the decree in insolvency was made, is payable after the time when the receiver delivered up the premises to the lessor." In response the court in substance said: "The covenant to pay rent in the future is, in fact, valueless by reason of the insolvency, for the covenantor will have no property to answer its liability thereon. * * * But whether the covenant be valueless or not, the debt to be proved cannot include rent to become due. The claim under the covenant in the lease, for rent accruing after the surrender of the premises to the lessor by the receiver, cannot be maintained. Pratt v. Levan, 1 Miles 358; Burrill onAssignments 491."
In Van Straaten and Havey, Inc., v. Foremost Silk HosieryMills, Inc., 126 N.J. Eq. 518; 10 Atl. Rep. 2d 292
(affirmed, 127 N.J. Eq. 53; 11 Atl. Rep. 2d 233), the court stated:
"As was pointed out in Bloch v. Bell Furniture Co., future rent is not a debt in the sense that it is absolutely due but *Page 386 
is merely a contingent liability, since, in case of termination of the tenancy, the landlord may lease the premises to someone else and thereby decrease or even completely destroy the liability. In view of the well settled rule that future rent is not provable, I do not consider that this court is justified in changing the rule merely because of a change in the Bankruptcy Act, in the absence of legislation providing for the following of changes in the Bankruptcy Act."
See, also, Klein v. W.A. Gavenesch Co., 64 N.J. Eq. 50;53 Atl. Rep. 196.
In Kipp v. Fidelity Title and Mortgage Guaranty Co.,116 N.J. Eq. 409; 174 Atl. Rep. 229, the court, among other things, said:
"The holder of a contingent claim cannot demand that the liquidation of the estate be delayed for his benefit, merely because of his possible future debt. Usher v. Sarco Co.,100 N.J. Eq. 428; 138 Atl. Rep. 199; Block v. Bell Furniture Co.,111 N.J. Eq. 551; 162 Atl. Rep. 414; 84 A.L.R. 885. It is over two years since the company was taken over by the court. There has been ample time for contingent creditors to establish their claims."
The subject of this suit is loss of money. That loss is computable according to legal standards. Schweitzer v.National House and Farms Association, 93 N.J. Eq. 644;117 Atl. Rep. 701; Sternberg v. O'Brien, 48 N.J. Eq. 370;22 Atl. Rep. 348.
The defendants charge also that the complainant has been guilty of laches. While, generally, a suitor in equity is not deprived of relief on the grounds of laches, the rule, however, is well defined with certain exceptions — if the suitor had knowledge of his rights and neglected to promptly seek a remedy for the violation, laches will interpose and set up its bar. Cole v.Brandle, 127 N.J. Eq. 31; 11 Atl. Rep. 2d 255; Phair v.Melosh, 125 N.J. Eq. 497; 6 Atl. Rep. 2d 491; affirmed,127 N.J. Eq. 15; 11 Atl. Rep. 2d 32; Hinners v. Banville,114 N.J. Eq. 348; 168 Atl. Rep. 618; Hall v. Otterson, 52 N.J. Eq. 522; 28 Atl. Rep. 907; affirmed, 53 N.J. Eq. 695;35 Atl. Rep. 1130.
Where a complainant shares in benefits from acts which *Page 387 
evidence her approval, equity will not favor her complaint in protest thereto. When she has knowledge of the act complained of and voluntarily does something which leads, or amounts to a recognition or approval of the validity of that act, and which appears to be inconsistent with its subsequent repudiation, such recognition or approval will operate as a bar to complainant's suit. 2 Pom. Eq. Jur. (4th ed.) ¶ 965.
It is apparent that the complainant had knowledge of the fact that the Trust Company was occupying the premises originally leased by her to the Savings Bank. She, over a long period of years, continued to receive the rent from the Trust Company, recognized its tenancy, and apparently was satisfied with all the conditions incident to its occupation of her premises. She at this late day, twelve years after the dissolution of the Savings Bank, seeks a remedy which was available to her at the time of the dissolution of the Savings Bank. Equity favors the vigilant.
The motions to dismiss the bill will be granted.